Charles W. KEMPE, Jr. and Michael J. Arnold, in Their Capacity as Joint Liquidators of Mentor Insurance Limited, Plaintiffs–Appellants–Cross–Appellees,

v.

OCEAN DRILLING & EXPLORATION COMPANY, et al., Defendants–Appellees,

and

Pinnacle Reinsurance Company, Limited, Defendant–Appellee Cross–Appellant.

No. 88–3763.

United States Court of Appeals, Fifth Circuit.

June 23, 1989.

Rehearing and Rehearing En Banc Denied July 24, 1989.

---

Lord, Day & Lord, Michael J. Murphy, Laurie E. Foster, New York City, Montgomery, Barnett, Brown, Read, Hammond & Mintz, Daniel Lund, Frederick E. Chemay, New Orleans, La., for plaintiffs-appellants-cross-appellees.

Phelps, Dunbar, Marks, Claveried & Sims, Steven R. Gilford, Harry A. Rosenberg, New Orleans, La., for Ocean Drilling.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Barkley, Jr., Francis R. White, III, New Orleans, La., for Pinnacle.

Breazeale Sachse & Wilson, Claude F. Reynaud, Jr., Murphy J. Foster, Gordon A. Pugh, Baton Rouge, La., for Higley.

Mayer, Brown & Platt, Ronald A. Jacks, Chicago, Ill., for Odeco, Mentor Holding Corp., Kelly, Kirkpatrick and Ocean Drilling.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, George A. Frilot, III, Roger A. Stetter, New Orleans, La., for Vaughan, Colson, Kelley, Herman & Steib.

Before ALDISERT *, REAVLEY and HIGGINBOTHAM, Circuit Judges.

ALDISERT, Circuit Judge.

The major question for decision is whether a count alleging a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, (RICO) immunizes a civil complaint from the doctrine of *forum non conveniens.* Should we decide there is no immunity, we are then required to determine whether the district court abused its discretion in concluding that Bermuda was the proper forum for this case after analyzing the private interest factors affecting the litigants' convenience and the public interest factors affecting the forum's convenience as set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and re-affirmed in *Piper Aircraft Co. v. Reyno,*

---

* Circuit Judge of the Third Circuit, sitting by designation.

454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). We conclude that the civil RICO complaint at issue here is not immune from the application of the doctrine and that the district court did not abuse its discretion in applying the doctrine.

### I.

Charles W. Kempe, Jr., and Michael J. Arnold, plaintiffs below, prosecute this appeal as joint liquidators appointed by the Bermuda Supreme Court to wind up the affairs of bankrupt Mentor Insurance Limited (Mentor), a company organized by special act of the Bermuda Parliament and located throughout its existence in Bermuda. Kempe is a Bermudian and a principal partner in one of Bermuda's largest accounting firms. Arnold is an accountant-liquidator, resident in England. Mentor's parent organization is Mentor Holding Corporation (MHC) which, in turn, is owned by Ocean Drilling & Exploration Co. (ODECO). MHC is a Delaware corporation with its principal place of business in New Orleans, Louisiana. ODECO is also a Delaware corporation with its principal place of business in New Orleans. Pinnacle Reinsurance Co., Ltd., is a reinsurance corporation having contractual relations with insurance company clients, including Mentor. Pinnacle is organized under the laws of Bermuda and has its principal place of business in Bermuda.

Mentor was formed in Bermuda by ODECO as a captive insurer to insure ODECO's oil drilling rigs. Mentor's business later expanded to insurance areas unrelated to ODECO or the oil business. By the 1980's, over 90% of Mentor's business was unrelated to ODECO.

In 1982, 1983, and 1984, Mentor entered into reinsurance agreements with Pinnacle. Reinsurance typically allows an insurance writing company to assign its risk to a reinsurance company in whole or in part. This has the effect of reducing its reportable loss reserves, thereby increasing its reported net worth. Once insurance risks are assumed by the reinsurer, the reinsured need not report these risks as liabilities on its balance sheet. However, certain accounting standards must be met in order for there to be a *bona fide* transfer of risk.

The liquidators allege that Mentor's agreements with Pinnacle, its reinsurance company, did not meet these standards. They contend that for each of the years in question, a secret side letter agreement provided that, notwithstanding the ostensible reinsurance agreement, Pinnacle's obligations would be limited to one fixed amount, unrelated to actual insurance losses, and payable only at the end of ten years. These secret side agreements, the liquidators allege, turned the agreements into financing arrangements ineligible to justify the balance sheet relief that Mentor claimed. The liquidators also allege that Mentor's financial statements were intentionally falsified by ODECO and its management from at least 1982 to March 1985. They contend that the financial reports materially overstated Mentor's financial health and concealed its dire financial condition by, *inter alia*, failing to disclose and properly account for the true nature of purported reinsurance agreements between Mentor and Pinnacle.

Although ODECO asserts that it did not discover these agreements until 1985, the liquidators allege that ODECO was a party to them all along. In its defense, ODECO contends that there was no falsification, that it relied on the work of Mentor's Bermudian accountants and auditors, and that the agreements were in accordance with generally accepted accounting principles in Bermuda.

Mentor went into involuntary liquidation in June 1985. The majority of Mentor's creditors are in the United States. On March 3, 1986, the liquidators brought this action in federal district court against ODECO, MHC, Pinnacle, and eight individual officer/directors of Mentor and/or MHC and ODECO. The complaint alleged violations of federal mail and wire fraud statutes comprising elements of RICO violations. In addition, plaintiffs asserted pendent state law claims for breach of fiduciary duty, fraudulent trading, and negligent misrepresentation. The *merits* of these arguments are not before us. The

*nature* of appellants contentions, however, is relevant to the issue of the degree of relief available in Bermuda courts.

In granting appellees' motion to dismiss the complaint on the grounds of *forum non conveniens*, the district court found that Bermuda was an available and adequate forum, and that both private and public interest factors favored litigation in Bermuda. 683 F.Supp. 1064. Defendant Pinnacle had filed a motion to dismiss for lack of *in personam* jurisdiction over Pinnacle. The district court denied Pinnacle's motion and its motion for reconsideration. The liquidator plaintiffs appeal the court's dismissal of the case on *forum non conveniens* grounds. Defendant Pinnacle cross-appeals the court's denial of its motion to dismiss for lack of personal jurisdiction. In the view we take of this case, Pinnacle's cross-appeal is moot.

## II.

Jurisdiction was proper in the trial court based on 28 U.S.C. §§ 1331 & 1332. Jurisdiction on appeal is proper based on 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(a), Fed.R.App.P.

■ The trial court's decision on the application of the *forum non conveniens* doctrine may be reversed only where there has been a clear abuse of discretion. *Piper Aircraft v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147 (5th Cir.1987), *vacated and remanded on other grounds sub nom. Pan American World Airways, Inc. v. Lopez*, — U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).

## III.

Our analysis begins with the balancing test set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and its companion case, *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Although "a plaintiff's choice of forum should rarely be disturbed," *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981), a federal court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. *Gulf Oil*, 330 U.S. at 507, 67 S.Ct. at 842. When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case. *Koster*, 330 U.S. at 524, 67 S.Ct. at 832. To guide trial court discretion, the Court has suggested a balancing of "private interest factors" affecting the convenience of the litigants, and "public interest factors" affecting the convenience of the forum. *See Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843.

Factors pertaining to the private interests of the litigants include the "relative case of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. at 843. Public interest factors bearing on the question include administrative difficulties flowing from court congestion, the "local interest in having localized controversies decided at home," the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case," the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 508–09, 67 S.Ct. at 843.

The teachings of *Gulf Oil* and *Koster* were reaffirmed in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). But *Reyno* added still another dimension to the test. We empha-

size this dimension now because it is extremely important in light of the major argument posed by the appellants here. *Reyno* specifically held that plaintiffs may not defend a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the chosen forum. *Id.* at 247, 102 S.Ct. at 261. In *Reyno*, the Court ruled that the possibility of an unfavorable change in the law is merely a factor to be considered, but that ordinarily this factor should not be given conclusive or even substantial weight in the forum inquiry. *Id.* The Court carefully explained that giving such a consideration inordinate weight "is not only inconsistent with the purpose of the *forum non conveniens* doctrine, but also poses substantial practical problems." *Id.* at 251, 102 S.Ct. at 263.

In *Reyno*, a small commercial aircraft crashed in the Scottish highlands. The plaintiffs sued the aircraft manufacturer and the company that made the propellers in a United States federal district court claiming negligence and strict liability. The district court dismissed the complaint on the basis of *forum non conveniens* after utilizing the *Gulf Oil* balancing test and determining that Scotland was the proper forum. The Court of Appeals for the Third Circuit reversed and improperly held that such a dismissal was inappropriate where the law in the alternative forum was less favorable to the plaintiff's claim. Reversing that ruling, the Supreme Court noted that the Third Circuit's decision was contrary to "every Federal Court of Appeals that ha[d] considered this question after [*Gulf Oil v.*] *Gilbert.*" *Id.* at 250, 102 S.Ct. at 263.

The Court was careful to indicate that in certain cases—where the alternative forum could not provide any remedy whatsoever —the unfavorable change in the law could be given substantial weight:

We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non conveniens* inquiry. Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice. In these cases, however, the remedies that would be provided by the Scottish courts do not fall within this category. Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.

*Id.* at 254–255, 102 S.Ct. at 265–266 (footnotes omitted).

This court has found a similar exception to the general rule to be appropriate in cases involving alleged violations of United States antitrust laws. In *Industrial Development Corp. v. Mitsui & Co.*, 671 F.2d 876 (5th Cir.1982), *vacated and remanded on other grounds*, 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983), we held that a complaint seeking relief solely under the federal antitrust laws, sections 1 and 2 of the Sherman Act, could not be dismissed under the doctrine of *forum non conveniens*. We stated there that to determine Indonesia to be the proper forum for that case would, in effect, "deprive[ ] [plaintiffs] of any remedy." *Reyno*, 454 U.S. at 255, 102 S.Ct. at 265.

[W]e have little doubt that the Indonesian courts would quite properly refuse to entertain plaintiffs' Sherman Act claim. A dismissal for *forum non conveniens*, then, would be the functional equivalent of a decision that defendants' acts are beyond the reach of the Sherman Act.

*Mitsui*, 671 F.2d at 891.

The crucial point succinctly stated in *Mitsui* was later amplified in *Laker Airways Ltd. v. Pan American World Airways*, 568 F.Supp. 811, 818 (D.D.C.1983):

Antitrust cases are unlike litigation involving contracts, torts, or other matters recognized in some form in every nation. A plaintiff who seeks relief by means of

one of these types of actions may appropriately be sent to the courts of another nation where presumably he will be granted, at least approximately, what he is due. But the antitrust laws of the United States embody a specific congressional purpose to encourage the bringing of private claims in the American courts in order that the national policy against monopoly may be vindicated. To relegate a plaintiff to the courts of a nation which does not recognize these antitrust principles would be to defeat this congressional direction by means of a wholly inappropriate procedural device.

The foregoing relevant legal precepts having been stated, we now turn to the appellants' specific contentions before us.

## IV.

It seems to be conceded that Bermuda would not recognize a civil RICO claim. From this basic premise, appellants argue that dismissal in favor of Bermuda would deprive them of a private suit which was conceived by Congress as part of a national scheme of enforcement to protect United States commerce. *See Mitsui,* 671 F.2d at 891 n. 20 (distinguishing civil obligations owed by one party to another in a tort case from private antitrust suit "conceived as part of the scheme of enforcement of statutes enacted to protect United States commerce.") Appellants argue that to apply the doctrine of *forum non conveniens* to a RICO action would frustrate Congress' intent to give RICO plaintiffs a right of access to a federal forum to seek redress.

To add sinew to this theory, appellants submit an argument in the form of the familiar categorical syllogism. Such an argument consists of comparing two terms— the minor with the major—by means of a middle term, to reach a conclusion. The major premise here is that, under the law of this Circuit, federal antitrust claims are immune from the doctrine of *forum non conveniens.* The minor premise is that RICO claims are, by analogy, the same as antitrust claims. Therefore, appellants conclude, RICO claims should also be immune.

Before us, as in the district court, the appellees challenge the factual basis of the minor premise, thereby vitiating the conclusion urged upon us by the liquidators.

## A.

To support their minor premise contention, appellants make detailed reference to RICO's legislative history. They note Congress' intent that "those who have been wronged by organized crime should at least be given access to a legal remedy.... It is the intent of this body ... to see that innocent parties ... have a right to obtain proper redress...." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 241, 107 S.Ct. 2332, 2345, 96 L.Ed.2d 185 (1987) (citing legislative history of RICO treble-damages provision). Appellants further contend that the RICO venue provision, 18 U.S.C. § 1965(a), was intended to be the same as that in the Clayton Act. Br. for appellants at 28 (citing H.Rep.No. 1549, 91st Cong., 2d. Sess. 58 (1970)), U.S. Code Cong. & Admin.News 1970, 4007.

From these excerpts of legislative history, the appellants then apply the method of analogy. They argue that, as in the case of the federal antitrust statutes, RICO is an effort to set forth a national policy to deal with a national threat to the commerce of the United States, and that private suits under the RICO statute are an integral part of Congress' RICO enforcement scheme. *Agency Holding Corp. v. Malley–Duff & Assoc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Sedima, S.P. R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Appellants further contend that the treble damages provision of RICO, in addition to being remedial, was meant to be a deterrent and penalty. *See Sedima,* 473 U.S. at 498–99, 105 S.Ct. at 3285–86. From that they ask us to draw the conclusion that relegating a private RICO plaintiff to a foreign court, in addition to eliminating the remedy, negates the penalty and deterrent imposed by Congress and frustrates the overall national enforcement scheme of RICO legislation. Finally, to drive home their point, they suggest that these are exactly the results

this Court sought to avoid in *Mitsui* by rejecting application of the *forum non conveniens* doctrine in the antitrust context.

## B.

Appellees respond, noting that the Supreme Court's recent analysis in *Shearson/American Express*, exposes some of the weaknesses of this argument. There the Court compared RICO violations with antitrust violations, but emphasized that RICO's drafters sought to provide vigorous incentives for plaintiffs to pursue RICO claims that would advance *"society's fight against organized crime." Id.*, 482 U.S. at 241, 107 S.Ct. at 2345 (emphasis added). The Court noted, however, that:

> ... in fact RICO actions are seldom asserted "against the archetypal, intimidating mobster." ... ("[O]nly 9% of all civil RICO cases have involved allegations of criminal activity normally associated with professional criminals")....
> The private attorney general role for the typical RICO plaintiff is simply less plausible than it is for the typical antitrust plaintiff....

*Id.* at 242, 107 S.Ct. at 2345 (citations omitted).

Moreover, the only other Court of Appeals to consider immunizing RICO cases from the *forum non conveniens* doctrine has met the appellants' argument head on and rejected it. In *Transunion Corp. v. Pepsi Co., Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (per curiam), the court noted:

> A review of the legislative history of RICO, however, discloses no mandate that the doctrine of *forum non conveniens* should not apply....

█ We are satisfied that appellants' legislative history argument proves too much. It has not persuaded us that Congress intended that *forum non conveniens* would not apply to civil RICO actions. Our independent review of the legislative history does not disclose that Congress intended directly or by fair inference to suggest that RICO would be immune from the doctrine's operation. In rejecting this contention as the basis of our decision, we reach the same result as the Court of Appeals for the Second Circuit, albeit for reasons somewhat at odds with theirs. In *Transunion*, the appellants had argued that RICO's broad venue provision mirrored that in the Clayton Act. They then pointed to the Supreme Court's opinion in *United States v. National City Lines, Inc.*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948) (*National City Lines I*), holding that the special venue provision in the Clayton Act deprived a court of discretion to dismiss a Sherman Act suit on *forum non conveniens* grounds. The Second Circuit rejected appellants' argument, stating that *National City Lines* was effectively overruled by the codification of the *forum non conveniens* doctrine in 28 U.S.C. section 1404. We think that statement sweeps too broadly.

Section 1404 authorizes the transfer of a case from one federal district court to another federal district court; it cannot apply in cases where the *forum non conveniens* doctrine is used to dismiss a case that must then be brought in a foreign court of law. Therefore, section 1404 only overruled the holding of *National City Lines I* to the extent that it applied to cases that could be transferred from one federal district court to another.

In light of the new congressional mandate regarding transfers, the Supreme Court allowed the same case to be transferred to another district court on later petition. *United States v. National City Lines, Inc.*, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949) (*National City Lines II*). In that later case, the Court did not indicate what result it would reach in a case where application of the *forum non conveniens* doctrine would lead to dismissal of a Sherman Act case in favor of a foreign forum. Such a situation is not covered by section 1404, which preserves the action, albeit in a different federal venue. Thus, to the extent that the Second Circuit relied on section 1404's overruling of *National City Lines I* to dismiss its own RICO case in favor of a forum in the Philippines, this court has not accepted its reasoning. In *Mitsui*, speaking through Judge Reavley, we said:

Defendants argue that the Supreme Court "effectively nullified" its holding in *National City Lines* by its second decision in that case, [*National City Lines II*]. Shortly after the Court's first decision, Congress, in an unrelated move, enacted 28 U.S.C. § 1404(a), which authorizes the district courts to "transfer any civil action to any other district or division" "[f]or the convenience of parties and witnesses." In *National City Lines II*, the Court, relying on the legislative history and the broad term "any civil action," concluded that the transfer statute applied to antitrust actions. 337 U.S. at 80–84, 69 S.Ct. at 956–58. The Court in no way questioned its earlier holding concerning the effect of [the venue provision of the Clayton Act] on common law *forum non conveniens*. Since defendants can point to no statute authorizing dismissal of an action on *forum non conveniens* grounds, *National City Lines II*, does not help them in any way. 671 F.2d at 890–891 n. 18. Having said this, we proceeded to deny dismissal on a very narrow and discrete ground—the impossibility of plaintiffs obtaining any remedy at all for their antitrust-based claims in Indonesia. We would not dismiss the case under *forum non conveniens* because such action would have been "the functional equivalent of a decision that defendants' acts are beyond the reach of the Sherman Act." *Id.* at 891.

### C.

■ Accordingly, we must now turn to what we believe to be the critical issue in this case: Without the RICO claim, will the plaintiffs "be deprived of any remedy" on the basis of the factual predicate of their complaint? The important inquiry here is whether the facts more resemble the products liability facts of *Reyno* or the antitrust facts of *Mitsui*. If they come within the rule of *Reyno*, appellants attempt to prove RICO immunity must fail; if they come within the rule of *Mitsui*, they will prevail.

To ask this question is to answer it. The district court specifically found that even without the RICO count, Bermuda permits

litigation in its courts of the fraud, negligent misrepresentation, breach of fiduciary duty, and piercing the corporate veil counts of the liquidators' complaint. Bermuda courts are totally competent to adjudge the claims that defendants falsified Mentor's financial statements, that the statements materially overstated Mentor's financial health and concealed its dire financial condition, and that they failed to disclose and properly account for the true nature of the purported reinsurance agreements between Mentor and Pinnacles.

Moreover, the district court found that the Bermuda trial courts have the power to "see to it that defendants make good whatever harm they did." Dist. ct. opin. at 1071. Accordingly, we conclude that "although [the liquidators'] potential damage award may be smaller, there is no danger they will be deprived of any remedy or treated unfairly." *Reyno*, 454 U.S. at 255, 102 S.Ct. at 265. This case is a far cry from *Mitsui*, where the complaint was solely bottomed on Sections 1 and 2 of the Sherman Act. In that case, dismissal in favor of a forum in Indonesia would have been the functional equivalent of denying the plaintiffs any remedy whatsoever.

We conclude, therefore, that the material facts here more closely resemble the facts in *Reyno* and should be subject to the same analysis employed there.

### V.

We are satisfied that the district court correctly utilized the *forum non conveniens* analysis set out by the Supreme Court in *Gulf Oil Corp. v. Gilbert* and *Piper v. Reyno*, and by this court in *In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147 (5th Cir.1987), *vacated and remanded on other grounds sub nom. Pan American World Airways, Inc. v. Lopez*, —— U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). This analysis requires a district court to first decide whether an available and adequate forum exists. "A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum.... A for-

eign forum is adequate when the parties will not be deprived of all remedies or treated unfairly ... even though they may not enjoy the same benefits as they might receive in an American court." *Air Crash Disaster*, 821 F.2d at 1165. If the court decides that the foreign forum is both available and adequate, it must then consider the parties' private interests, allowing for the relevant deference given the plaintiff's choice of forum, and factors of the public interest, such as burdens upon the court, public interest in the dispute, and questions of foreign law. *Id.* at 1165–66. The court should consider the specific factors set forth in part II of this opinion and enumerated in *Gulf Oil* and *Koster*.

The district court correctly determined that Bermuda is both an available and adequate forum. Although the RICO cause of action is not available in Bermuda, a forum is inadequate only where it would afford a plaintiff no remedy at all. *Air Crash Disaster*, 821 F.2d at 1165. The district court found that plaintiffs would be able to bring all their other causes of action before the courts in Bermuda. The court then carefully examined the private interests of the litigants. All defendants have agreed to stipulate to jurisdiction in Bermuda. Mentor is a Bermuda corporation heavily regulated by Bermuda law. The agreements at issue were between Mentor and Pinnacle, also a Bermuda company with offices located only in Bermuda. The agreements provide that disputes are to be arbitrated in Bermuda, and provide for the application of the laws of Bermuda to the agreements.

Both plaintiffs and defendants have identified numerous individuals and corporations residing in Bermuda whose testimony at trial will be significant. The district court pointed out that plaintiffs have identified as potential witnesses only three non-party individuals within the Louisiana court's subpoena power. The court also made dismissal subject to a six-month stay to permit discovery in the United States.

Finally, plaintiffs in this care are a Bermudian and an Englishman, representing a Bermuda corporation. Both this court and the Supreme Court have recognized that a foreign plaintiff's choice of an American forum deserves less deference than an American citizen's selection of his home forum. *Reyno*, 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Air Crash Disaster*, 821 F.2d at 1164.

The district court also analyzed the public interest factors here, including the "drain on the court's time and energy which trial in New Orleans will entail." Dist. ct. opin. at 1070. With regard to the local interest in having localized controversies resolved at home, the court explained that Bermuda is an international insurance center and has a strong interest in regulating its industry so as to retain credibility abroad. *Id.* at 1070. In contrast, the defendants' residence in Louisiana does not represent any broader interests of the state in this action. *Id.* at 1071. Finally, the court found that trial of this matter will entail the application of Bermudian law to at least two of the causes of action. *Id.* at 1072.

We conclude that the district court did not abuse its discretion in deciding that both private interest factors affecting the convenience of the litigants and the public interest factors affecting the convenience of the forum favor resolution of this lawsuit in Bermuda rather than in Louisiana.

## VI.

We have considered all other contentions raised by the appellants. The judgment of the district court is

AFFIRMED.