Gillian **DENMARK**, et al.

v.

Nicholas Aris **TZIMAS**.

Civ. A. No. 94–0135.

United States District Court,
E.D. Louisiana.

Nov. 21, 1994.

Dwight Michael Doskey, New Orleans, LA, for plaintiffs.

Wilbur Anthony Toups, III and Eric J. Simonson, Chaffe, McCall, Phillips, Toler and Sarpy, New Orleans, LA, for defendant.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the defendant's motion to dismiss for lack of personal jurisdiction or, alternatively, on the ground of *forum non conveniens*. For the reasons that follow, the motion is GRANTED.

## Background

This case began when criminal charges were filed against Gillian Denmark, a British citizen,[1] in June 1992 by British authorities accusing her of theft and handling of stolen goods belonging to Nicholas Aris Tzimas, also a British citizen. During the criminal proceedings, Mr. Tzimas obtained a High Court writ against Mrs. Denmark and another individual. The writ charged Mrs. Denmark with the unlawful seizure and detention of certain valuable ceramic objects that Mr. Tzimas claimed she wrongfully removed from his vehicle. In addition to the Ipswich writ, Mr. Tzimas also obtained something called a "Mareva Injunction," which restrained Mrs. Denmark and another from removing assets from the jurisdiction of the English courts and prohibited withdrawals from a bank account controlled by Mrs. Denmark at the National Westminster Bank in Cambridge, England.

In September 1993 Mrs. Denmark and her co-defendant were acquitted of the criminal charges. The English court found that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. However, a pending civil suit in the English courts by Mr. Tzimas against Mrs. Denmark to recover the value of the items he claims were wrongfully taken by her as well as for lost business profits has not yet been decided. Thus, the Mareva Injunction remains in effect.

On January 12, 1994 Mrs. Denmark and her husband, a Louisiana citizen, filed suit in this Court against Mr. Tzimas. The plaintiffs contend that Mr. Tzimas accused Mrs. Denmark of a theft which, they claim, never occurred. They sue him for malicious prosecution. Mr. Denmark claims for loss of consortium. The Denmarks also add a claim for libel and slander based on Mr. Tzimas' false accusation and for his having "caused to be published" an article in the British magazine "Collecting Doulton," which described Mrs. Denmark's arrest and prosecution.[2] They charge that Mr. Tzimas "told numerous customers, potential customers, and fellow dealers that the plaintiffs were thieves."[3] In their recently filed first amended and supplemental Complaint, the Denmarks allege that Mr. Tzimas telephoned Mr. Denmark at his home in Louisiana on two occasions to communicate his claim that Mrs. Denmark was "a burglar, a thief, and was probably having an affair with the man arrested as her co-defendant." Mr. Tzimas also is said to have sent Mr. Denmark facsimile copies of articles describing Mrs. Denmark's arrest and prosecution. Finally, the Denmarks broadly complain that Mr. Tzimas tortiously interfered with their business relationships in violation of the Louisiana "Unfair Trade Practices and Consumer Protection Law," LSA–R.S. 51:1401 et seq., "by his deliberate spreading of tales he knew to be untrue."

Mr. Tzimas now moves, for the second time,[4] to dismiss the plaintiffs' Complaint for

1. For purposes of determining diversity of citizenship, however, Mrs. Denmark is considered a citizen of Louisiana, the state of her permanent residence. See 28 U.S.C. § 1332(a).

2. The plaintiffs have submitted an affidavit by Mrs. Denmark which appears to assert additional facts in support of plaintiffs' claim for libel and slander. Specifically, Mrs. Denmark avers that conversations with reporters from the Times–Picayune, who received clippings from British newspapers detailing the course of proceedings against her, mailed in envelopes bearing no return address, lead her to believe that if truthful, [Mr. Tzimas] will admit in deposition to mailing those articles. (Gillian Denmark Aff. ¶ 5). Plaintiffs have failed to present any evidence to further support this allegation. See infra note 4.

3. However, the Court notes that plaintiffs fail to provide any facts concerning these customers' and dealers' contacts with this forum. In fact, the only evidence presented leaves this issue wildly ambiguous. In their Complaint, plaintiffs maintain that they sell their products throughout the United States. (See Compl. ¶ 7). The plaintiffs also intimate that they conduct business both domestically and in foreign countries. (See Compl. ¶ 16). The only affidavit remotely touching this issue comes from an antique dealer based in Florida. (See Pascoe).

4. Defendants previously urged this same motion to dismiss in June 1994. This Court, by minute entry dated August 12, 1994, concluded that defendant's motion was premature and dismissed it without prejudice. With respect to the personal jurisdiction issue, the Court gave the plaintiffs sixty additional days to conduct discovery on the limited question of the extent of defendant's claimed involvement, if any, in the publication of articles in "Collecting Doulton" and the Times–

lack of personal jurisdiction or, alternatively, on the ground of *forum non conveniens.* The Court finds that dismissal for lack of personal jurisdiction is warranted. The Court also finds that this case should be dismissed on the ground of *forum non conveniens.*

### I. *Personal Jurisdiction*

■■■ In this motion setting, the plaintiffs bear the burden of establishing a prima facie case that this Court's exercise of personal jurisdiction is proper. *Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). The Court is empowered to determine the propriety of its exercise of jurisdiction by reviewing discovery material, such as affidavits or depositions. *Washington v. Norton Mfg., Inc.,* 588 F.2d 441, 443 (5th Cir.), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979). In evaluating the issue, however, "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985).

■■■ In suits based on diversity jurisdiction, a federal court may exercise jurisdiction over a nonresident defendant only if the exercise of jurisdiction is permitted by the long-arm statute of the forum state. *Quasha v. Shale Development Corp.,* 667 F.2d 483, 484–85 (5th Cir.1982). Here, the plaintiffs assert jurisdiction under the Louisiana Long Arm Statute, LSA–R.S. 13:3201 [5], which permits the exercise of personal jurisdiction to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784,

786 (5th Cir.1990). Thus, the jurisdictional inquiry in this case invokes a two-step due process analysis. It is remarkably straightforward. The exercise of personal jurisdiction does not offend due process requirements if (1) the foreign defendant has some minimum contacts with the state resulting from affirmative or purposeful conduct of the defendant, and (2) it is not unfair or unreasonable to require the defendant to defend the suit in the local host forum. *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990); *Growden v. Ed Bowlin and Associates, Inc.,* 733 F.2d 1149, 1150 (5th Cir. 1984). Each of the two steps of this constitutional test must be independently satisfied; "the fairness prong cannot compensate for or overcome the requirement of some minimum contacts with the forum state." *Growden,* 733 F.2d at 1150–51 (footnote omitted). If one test fails, the Court must decline to exercise its limited jurisdiction.

### A. *Minimum Contacts*

■■■ The first inquiry requires that the defendant have sufficient minimum contacts with the forum to justify an acceptance of personal jurisdiction. The degree of minimum contacts required to satisfy due process necessarily varies with the nature of the underlying claims. If the cause of action arises out of, or is directly related to, the defendant's purposeful contacts with the forum, the court may exercise "specific jurisdiction." *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). In such a case, activity or conduct directed by the nonresident defendant toward the forum may be enough to establish the requisite minimum contacts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The question to be answered is whether "the defendant purposefully avail[ed] [him]self of the privilege of conduct-

Picayune. However, plaintiffs have presented no further evidence regarding this issue.

**5.** In particular, plaintiffs assert jurisdiction under LSA–R.S. 13:3201(3) and (4). These provisions provide that

[a] court may exercise personal jurisdiction over a nonresident, who ...

(3) Caus[es] injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Caus[es] injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct ... in this state.

ing activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The answer is defined by what seems reasonable: The defendant's conduct and nexus with the forum state must be such that one should reasonably foresee being subject to suit in the forum state, *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), as when one's conduct outside the state bears predictable consequences within the state. *See DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270 (5th Cir.1983). In some instances, then, personal "jurisdiction may arise without the nonresident defendant[ ] ever stepping foot upon the forum state's soil or may arise incident to the commission of a single [substantial] act directed at the forum." *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990) (footnotes omitted).

However, if the cause of action does not arise out of the foreign defendant's special or distinct contacts with the host forum, the court must shift its jurisdictional inquiry to the more austere analysis that informs the doctrine of "general jurisdiction." In evaluating a claim of general jurisdiction, one must demand a more rigorous level of contacts with the forum so that they can be accepted as "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Thus, general jurisdiction contacts or activity must be more extensive than in the case of the specific jurisdiction analytical model. *Dalton,* 897 F.2d at 1361–62.

It seems clear that, on this record, only the test for specific jurisdiction is inferred by the facts presented. The Court thus looks to the jurisdictional facts in this case to determine whether the plaintiffs have made out a prima facie case that Mr. Tzimas has had the requisite minimum contacts with Louisiana to support its exercise of specific jurisdiction over plaintiffs' claims. The plaintiffs make a variety of charges. "In a multiple claim action, the court must scrutinize each claim being asserted to make certain that the defendant is within its reach for

purposes of adjudicating that claim." Jack H. Friedenthal et al., *Civil Procedure* § 3.12, at 141 (1985). Thus, jurisdiction acquired under a long-arm statute "does not extend to claims outside the scope of the statute." *Id.; see also Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 544–45 (3d Cir.1985); *Fortay v. University of Miami,* Civ. A. No. 93–3443, 1994 WL 62319, at *7, 14 n. 19 (D.N.J. Feb. 17, 1994). The Court, then, must evaluate the jurisdictional allegations in light of each of the plaintiffs' claims.

Certain facts are uncontroverted. Mr. Tzimas is a resident and citizen of the United Kingdom and the owner and director of U.K. International Ceramics, Ltd., a U.K. business with its principal place of business there. Neither Mr. Tzimas nor U.K. International Ceramics, Ltd. conduct any business in Louisiana, and neither have maintained any office, facility or telephone listing here. No agents or employees have ever lived in Louisiana. Neither have any real property, bank accounts, brokerage accounts, or any other type of financial accounts here. Finally, they do not pay taxes or file any tax returns in Louisiana and have never used the courts of this state.

Plaintiffs assert that Mr. Tzimas nevertheless has the requisite minimum contacts for the Court to exercise personal jurisdiction over him. They maintain that Mr. Tzimas "caused to be published" an article in the British magazine "Collecting Doulton," and speculate that he mailed articles to the Times–Picayune about Mrs. Denmark's arrest and prosecution. They say that Mr. Tzimas told several customers and dealers that the plaintiffs were thieves (although they provide only one reference, which has no connection to this forum). In addition, they draw the Court's attention to Mr. Tzimas's two alleged telephone calls to Mr. Denmark at his home in Louisiana during which he supposedly communicated his claim that Mrs. Denmark was "a burglar, a thief, and was probably having an affair with the man arrested as her co-defendant." The transmission to Mr. Denmark of facsimile copies of articles describing Mrs. Denmark's arrest and prosecution are similarly mentioned. Finally, plaintiffs insist that Mr. Tzimas has

advertised in the British publication "Collecting Doulton" (which has seven thousand subscribers, "many" in Louisiana) and the American publication "The Antique Trader" (which has over 144,000 copies printed weekly, "many" distributed in Louisiana).[6]

### 1. *Malicious Prosecution*

■ The Court emphasizes that neither the plaintiffs, who have the burden of establishing a prima facie case of personal jurisdiction, nor the defendant address this claim in their papers. Furthermore, because the Court has determined that the general jurisdiction model is not applicable in this case, the Court concludes that it is not empowered to adjudicate plaintiffs' claim for malicious prosecution. All of the events giving rise to this claim occurred in England, and no basis exists in the record for a finding of specific jurisdiction as to this claim under the doctrine already discussed.

### 2. *Libel and Tortious Interference with Business Relationships*

■ Essentially, the plaintiffs invoke the "effects" doctrine to support their claim of personal jurisdiction over these discrete claims. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191 (9th Cir.1988); *Coreil v. Pearson,* 242 F.Supp. 802 (W.D.La.1965). They ask the Court to focus on their claims for libel and slander and tortious interference with business relationships when considering the defendant's contacts with Louisiana.

The Denmarks' special claim for libel and slander charges that Mr. Tzimas caused articles about Mrs. Denmark's arrest and prosecution in England to be published in "Collecting Doulton" and in the Times–Picayune.[7] They seek to strengthen this claim with the

telephone calls and transmission of faxes. The Denmarks insist, as they must, that Mr. Tzimas intended this conduct to have the greatest effect on the plaintiffs in their home state of Louisiana, and that jurisdiction over Mr. Tzimas is therefore proper in Louisiana by virtue of the "effects" of the defendant's conduct here. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191 (9th Cir.1988); *Coreil v. Pearson,* 242 F.Supp. 802 (W.D.La.1965). Plaintiffs' reliance on these cases is misplaced.

Both *Calder* and *Coreil* involved defendants who regularly published and distributed their work in the forum states in question and earned their living as journalists. The facts before this Court are far less compelling. Moreover, in *Calder,* the Supreme Court emphasized that the libelous article focused on the *"California* activities of a California resident." *Calder,* 465 U.S. at 788, 104 S.Ct. at 1486 (emphasis added). In obvious contrast, the allegedly libelous articles in this case focus on the English activities of an English citizen.[8]

The *Sinatra* case, although factually different from *Calder* and *Coreil,* is equally distinguishable. The *Sinatra* facts are eccentric. There, Sinatra sued both the National Enquirer and a Swiss medical clinic after the Enquirer published an article with the false allegation that Sinatra had visited the clinic for treatment, an allegation which the clinic "refused to confirm or deny." *Sinatra,* 854 F.2d at 1193. The clinic had made a deal with the National Enquirer whereby the clinic would refuse to confirm or deny whether Mr. Sinatra was a patient at the clinic and, in return, the Enquirer would send an editor to Switzerland to do a full story on the clinic. *Id.* The Ninth Circuit concluded that the clinic intended to actively solicit clients through the publication of the offending arti-

---

6. This final jurisdictional claim can be immediately disposed of because the Fifth Circuit has held that "advertising in ... two national ... publications which circulated in Louisiana is insufficient, without more, to constitute a 'purposeful availment' of the facilities of Louisiana." *Growden,* 733 F.2d at 1150.

7. The Court notes that the Times–Picayune accusation was not raised in the plaintiffs' Complaint

and, according to the defendant, should not be considered by the Court as a basis for exercising personal jurisdiction. In light of plaintiffs' amended allegations, however, the Court disregards the defendant's argument on that point.

8. It should also be noted that in *Calder,* the National Enquirer had its largest circulation in California.

cle in a widely distributed magazine in the United States. *Id.* at 1198. Finally, the clinic had attempted to contact Sinatra in California to solicit him to come to the clinic in Switzerland. *Id.* at 1193. Faced with these numerous distinctive contacts with California surrounding the publication of the article, the Ninth Circuit held that specific jurisdiction was present in that case. *Id.* at 1198.

The Denmarks do not elaborate on their suspicion that Mr. Tzimas "caused" an article to be published.[9] But even if Mr. Tzimas did cause an article to be published, the plaintiffs have presented no evidence nor does the record even hint the existence of an agreement between Mr. Tzimas and either the British magazine or the local newspaper, like the agreement between the Enquirer and the Swiss clinic in the *Sinatra* case. Any so-called relationship between the defendant and Louisiana is simply too remote for the Court to conclude that, as a result of his alleged role in causing the publication of the articles, the defendant purposefully directed any conduct at Louisiana such that he reasonably could foresee being haled into court here on claims of libel or tortious interference with business relationships. The telephone calls, however, present a different problem.

■ As to plaintiffs' assertion that Mr. Tzimas libeled Mrs. Denmark by his false allegation of theft to Mr. Denmark in Louisiana by telephone, the Court finds plaintiffs' assertion of specific jurisdiction on somewhat stronger footing. Few cases in this circuit are close to the point. The ones that are, however, instruct that one telephone call can be enough. In *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983), the plaintiffs, Mississippi citizens, sued defendants, foreign residents, in a Mississippi federal court. The plaintiffs said that they were injured by a single long-distance defamatory telephone call from de-

fendants in Indiana to a U.S. Attorney in Mississippi. *Id.* at 330. The court noted that it is the purposeful nature of the defendant's contacts with the forum, rather than the number of those contacts, that is of significance. *Id.* at 333. Despite the fact that defendants had no other contacts with the forum, the court, relying on Mississippi's long-arm statute,[10] held that the defendants would not be denied due process by being subjected to suit in Mississippi. *Id.* at 333–34. The court emphasized that the defendants "initiated the telephone call and allegedly committed an intentional tort," *id.* at 334 (footnotes omitted), the effect of which the defendants could "easily have foreseen" would be felt in Mississippi. *Id.; see also D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir.1985) (predicating the court's exercise of jurisdiction *in part* on the fact that the nonresident defendant took part in telephone conversations to or from the state to carry out his fraudulent scheme); *Ramm v. Rowland*, 658 F.Supp. 705, 709 (S.D.Tex. 1987) (holding that defendant's telephone calls, spanning over a year, to plaintiff's former wife in Texas which encouraged her to leave her husband, accorded personal jurisdiction because such calls constituted the essence of the alleged tort, the consequences thereof were foreseeable, and the totality of circumstances warranted it).

Although it has been said that "[t]he tort[ ] of libel ... [is a] unique tort[ ] which courts have ... held to have occurred simultaneously in the locales of transmission and receipt," *Paul v. International Precious Metals Corp.*, 613 F.Supp. 174, 176 (S.D.Miss.1985) (citing *Keeton v. Hustler Magazine*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)), the Fifth Circuit has recently held that the place of occurrence of a tort is only one consideration and is not dispositive of the jurisdictional issue. *Wilson*, 20 F.3d at 648. However, "a non-resident's mere communications into Louisiana" have been held to constitute "acts or omissions" for purposes of LSA–R.S.

---

9. This is so despite the Court's grant of additional time for discovery on this special issue.

10. Mississippi's long-arm statute accords personal jurisdiction over any nonresident who "com-mit[ted] a tort in whole or in part in [Mississippi] against a [Mississippi] resident." *Id.* at 331 n. 2 (quoting Miss.Code Ann. § 13–3–57 (Cum.Supp. 1981)).

13:3201(3). *Kempe v. Ocean Drilling & Exploration Co.*, Civ. A. No. 86–891, 1987 WL 11163, at *1 (E.D.La. May 14, 1987) (citing *Simon v. United States*, 644 F.2d 490 (5th Cir.1981)). In addition, we are regularly reminded that Louisiana's long-arm statute is to be liberally construed in favor of the exercise of jurisdiction. *Kempe v. Ocean Drilling & Exploration Co.*, Civ. A. No. 86–0891, 1986 WL 14790, at *1 (E.D.La. Dec. 19, 1986); *Robinson v. Vanguard Ins. Co.*, 468 So.2d 1360, 1365 (La.Ct.App.1985). For these reasons, " 'Louisiana courts have consistently found its long arm statute applicable, and constitutionally permissible, where a single act in Louisiana, by a person or thing for which the non-resident tortfeasor is responsible, contributes to the injury.' " *Id.* (quoting *Simon*, 644 F.2d at 497, n. 10). In *Kempe*, the court held that wire and telephone communications into Louisiana by a nonresident constituted "acts or omissions" sufficient to confer personal jurisdiction under R.S. 13:3201(3). *Id.* at *2; *see also Aucoin v. Hanson*, 207 So.2d 834 (La.Ct.App. 1968) (nonresident subjected to Louisiana personal jurisdiction on the basis of a telephone call from out of state into Louisiana initiating a transaction).

The cases require this Court to conclude that plaintiffs have made a prima facie showing that Mr. Tzimas is subject to this Court's specific jurisdiction over their claim that he made libelous phone calls. By initiating a telephone call from England to Mr. Denmark in Louisiana, and by publicizing alleged defamatory remarks about Mrs. Denmark, Mr. Tzimas can be said to have committed a tortious act in Louisiana sufficient to establish minimum contacts with this forum. However, as to their claim for tortious interference with their business relationships, the Court cannot conclude that plaintiffs have established the requisite contacts to subject defendant to suit on that claim here in Louisiana. The case literature simply does not support that result. Step two is next.

### B. *Fairness Component*

■ The second part of the constitutional inquiry concerns the fairness of requiring the defendant to defend the suit in this forum. It must also be satisfied. *See Wilson*, 20 F.3d at 647. Because the Court has concluded that the requisite minimum contacts are lacking as to plaintiffs' other claims, step two implicates only the claim for the libellous phone calls. The fairness inquiry on this claim in turn involves the discussion of several factors:

> [T]he burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the shared interest of the several states in furthering fundamental social policies.

*Command–Aire Corp. v. Ontario Mechanical Sales and Serv. Inc.*, 963 F.2d 90, 95 (5th Cir.1992).

■ Here, the burden on the defendant would not be insignificant; he would have to litigate his defense to plaintiffs' libel claim in this country, even though the events giving rise to the alleged libel originated in England and although all the witnesses to the truth of his statements or the existence of a qualified privilege are in England. However, plaintiffs' interest in obtaining convenient and effective relief obviously would also be promoted by permitting them to litigate here at home in Louisiana. But that consideration is considerably weakened: The witnesses as to the falsity of defendant's statements and malicious purpose are in England; the only Louisianians likely to give testimony regarding the effect of the phone calls are Mr. Denmark and perhaps the Denmark children. Louisiana and England both have an interest in this litigation.

In conclusion, although the defendant has the requisite minimum contacts with Louisiana as to the libel claim, the Court finds that forcing him to defend plaintiffs' claim of libel in this forum fails to satisfy the fundamental fairness requirements of due process.

Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.

### II. *Forum Non Conveniens*

■ The Court also holds that this case should be dismissed on the ground of *forum non conveniens.*

■ "[A] federal court sitting in a diversity action is required to apply the federal

**270**

law of forum non conveniens when addressing motions to dismiss a plaintiff's case to a foreign forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1159 (5th Cir.1987), *vacated on other grounds sub nom., Pan American World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, *reinstated save as to damages under orig. nom.,* 883 F.2d 17 (5th Cir.1989). The *forum non conveniens* analysis requires this Court to pursue still another two-step analysis: (1) the Court must first determine whether an adequate alternative foreign forum exists; and (2) if such a forum exists, it must then balance the relevant private and public interest factors, keeping in mind that "[c]onvenience is at the heart of the inquiry." *Command–Aire,* 963 F.2d at 95.

### A. *Available Foreign Forum*

■ The Fifth Circuit has held that a foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. *Air Crash Disaster,* 821 F.2d at 1165. Comparative equality of juridical benefits is not a pertinent criterion. Parity of relief is not a consideration. "A foreign forum is adequate," the Fifth Circuit has written, "when the parties will not be deprived of all remedies or treated unfairly ... even though they may not enjoy the same benefits as they might receive in an American court." *Id.* at 1165 (citation omitted). This requirement is generally satisfied if the defendant is amenable to process in the foreign jurisdiction. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 255 n. 22, 70 L.Ed.2d 419 (1981).

■ The plaintiffs' claims arise out of certain wrongful conduct that occurred in England. Mr. Tzimas is a citizen and resident of England and is indisputably amenable to process there. Accordingly, England is an adequate and available forum.[11]

### B. *Private Interests*

■ Although a plaintiff's forum choice should ordinarily be respected, *Command–Aire,* 963 F.2d at 95, that choice is to be accorded less deference when, as here, the plaintiff or real parties in interest are foreign. *Reyno,* 454 U.S. at 255, 102 S.Ct. at 265. A plaintiff's choice of forum, therefore, is by no means dispositive—especially when a plaintiff is not a U.S. citizen. In this case, although Mrs. Denmark is a resident of Louisiana, she is a citizen of Great Britain.

In deciding whether to exercise or decline jurisdiction for *forum non conveniens* reasons, a court's "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. American Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). In reaching this determination, the Court looks to several private interest factors:

> '[T]he relative ease of access to sources of proof; [the] availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; [t]he possibility of view of [the] premises, if ... appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'

*Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1141 (5th Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

In this case, the convenience of the parties and the needs of justice heavily weigh in favor of this case being resolved in England (bearing in mind, too, that a related civil case is pending in the English courts). It is helpful to emphasize again that the majority, if not all, of the primary witnesses with information regarding the plaintiffs' claims or defendant's defenses are foreigners, and, except for the plaintiffs themselves, are all in

11. The plaintiffs would make the point that England is not an adequate forum because English lawyers cannot take cases on a contingency fee basis. They add that because their assets in England are subject to the Mareva Injunction, they do not have the funds to retain counsel in England. The Fifth Circuit has directly considered and rejected these arguments as a basis for finding that a foreign forum is unavailable for the purpose of *forum non conveniens. Coakes v. Arabian American Oil Co.,* 831 F.2d 572, 575–76 (5th Cir.1987).

the United Kingdom. These witnesses are beyond the subpoena power of this Court and the cost of obtaining the attendance of willing witnesses residing in England would be excessive and present an unnecessary economic hardship upon all parties. *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 (5th Cir.1987). Moreover, the documentary evidence, including records of the British police, prosecutors, and courts, are all similarly housed in the United Kingdom.

Dismissal of this case would be appropriate even if numerous primary witnesses resided in the United States. *Coakes, supra*, 831 F.2d at 574–5 (dismissal appropriate even though thirteen witnesses resided in various parts of the United States and the burden of transporting those witnesses to England would be intolerable). As in *Coakes*, this Court will compensate the burden on the plaintiffs, if any, by allowing merits discovery to proceed under the supervision of the Court for ninety days. *Id.* Trial in England will facilitate the parties' access to main sources of proof and make for an easier and more expeditious trial.

### C. *Public Interest Factors*

 The Court must next evaluate a number of public interest factors. They are:

[The] administrative difficulties flowing from court congestion, the 'local interest in having localized controversies decided at home,' the interest in 'having the trial of a diversity case in a forum that is at home with the ... law that must govern the case,' the avoidance of unnecessary problems in conflict of law, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Kempe*, 876 F.2d at 1141 (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843).

The public interest factors also weigh in favor of dismissing the plaintiffs' Complaint. First, this is a dispute primarily between foreign nationals and is of little observable public interest to Louisiana courts. Second, jury duty should not be imposed on the citizens of this district in a case of this sort, primarily arising from the actions of two foreign nationals and wrongful conduct that allegedly occurred in England. *See, e.g., Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843 ("Jury duty is a burden that ought not to be imposed on the people of a community which has no relation to the litigant"). Third, this Court has an interest in ensuring that the trial shall go forward in a forum familiar with the governing law. The parties do not contest and the Court concludes [12] that English law predominates this case. Although this Court is capable of applying English law, the courts of England are certainly better suited for such a task.

Accordingly, the defendant's motion to dismiss on the ground of *forum non conveniens* is GRANTED. The Court orders, however, that merits discovery consistent with this ruling shall be permitted for a period of ninety days.[13]

---

**12.** Following the pronouncement of *Klaxon Co. v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Court looks to Louisiana conflict of law rules to determine whether English or Louisiana law applies. Louisiana Civil Code Article 3515 mandates that the applicable law comes from the state whose policies would suffer the greatest impairment if held not to apply.

A conflict arises because both Louisiana and England arguably have interests in this litigation. Louisiana is presumably the place where the plaintiffs suffered much injury (such as the loss of companionship and some of the damage to their business). However, because the events giving rise to the claims occurred in England, because the plaintiffs claim entitlement to relief for some injuries occurring in England, because of the English citizenship of defendant and one of the plaintiffs, because of the fact that the relationship between the parties is centered in England, and because of social interest concerns, *see* La.Civ.Code Ann. art. 3542 (West 1994), this Court concludes that Louisiana conflicts of law rules dictate the application of English law.

**13.** This case will be administratively closed pending completion of limited discovery. Either party may move to re-open to resolve a discovery dispute. At the end of ninety days, the case will be formally transferred.