United States Court of Appeals,

Fifth Circuit.

No. 91–8509

Summary Calendar.

COMMAND–AIRE CORP., Plaintiff-Appellee,

v.

ONTARIO MECHANICAL SALES AND SERVICE INCORPORATED, Defendant-Appellant.

June 18, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Ontario Mechanical Sales and Service Incorporated (OMS) appeals a bench trial judgment for $60,400 which approximates a default judgment. For the reasons assigned, we affirm.

Background

OMS is a Canadian corporation with its principal place of business in Canada. Command-Aire Corp. is incorporated in Texas and has its principal place of business there. In 1986, OMS entered into a sale representative agreement with Command–Aire under which OMS made numerous bookings for Command-Aire products for which it received commissions. In January of 1989 the OMS president and principal owner, Lou Barbesin, met representatives of Command-Aire at a convention in Chicago and discussed the possible purchase of heat pump equipment manufactured by Command-Aire. During the period of negotiation preceding the actual sale, Barbesin traveled to Texas to deliver and discuss engineering and design specifications. Contract negotiations were conducted and the contract was finally consummated by use of telephonic and mail services. A choice of law clause provided that Texas law controlled the sale and that any dispute thereunder would be resolved in Texas court. Although the initial sales agreement contemplated that Command-Aire

would deliver the equipment, the parties ultimately agreed that OMS would take possession in Texas. OMS installed the pumps in Canadian condominiums. Contending that the pumps were defective, OMS refused to make payment as agreed.

Command–Aire filed suit for the purchase price in Texas state court. OMS removed to federal court and moved to dismiss for lack of personal jurisdiction or, in the alternative, on grounds of *forum non conveniens*. OMS argued that it is not registered to do business in Texas, does not have a regular place of business or own property there, and would suffer hardship defending the suit in a Texas forum. After considering the pleadings and affidavits the district court denied both motions.

The case was originally set for trial on October 29, 1990 but because of psychiatric difficulties experienced by the president of OMS, including hospitalization, three continuances were granted and the trial was finally set for July 15, 1991. On that date, a fourth continuance was sought by OMS. In support of its motion OMS offered a handwritten note ostensibly written by a physician which stated: "Mr. Lou Barbesin is a patient under my care. I have advised Mr. Barbesin that he should not leave the immediate vicinity of his home in Toronto until further notice." The court denied the fourth continuance. Because of the failure by OMS to answer interrogatories served in September of 1990 and its failure to comply with the October 1990 pretrial order, the court granted Command–Aire's motion for sanctions and struck all of the OMS pleadings except those relating to personal jurisdiction and *forum non conveniens*. The court then entered judgment for Command–Aire for $60,400, plus interest and fees. OMS timely appealed.

Analysis

1. *Personal Jurisdiction*

A district court's finding that personal jurisdiction may be exercised over a nonresident

defendant is a question of law reviewable *de novo.*[1]  A nonresident defendant is subject to personal

jurisdiction in a federal diversity suit to the extent permitted by the laws of the forum state and

considerations of constitutional due process.  *Bullion v. Gillespie,* 895 F.2d 213 (5th Cir.1990).

Inasmuch as the Texas Long Arm statute reaches as far as is constitutionally allowed, the personal

jurisdiction question is actually a constitutional due process inquiry.  *Id.;  Bearry v. Beech Aircraft*

*Corp.,* 818 F.2d 370 (5th Cir.1987);  *see also* Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–17.045.

That inquiry has two components:  (1) the defendant purposefully must have established minimum

contacts with the forum state, invoking the benefits and protections of that state's laws and, therefore,

reasonably could anticipate being haled into court there;  and (2) the exercise of personal jurisdiction,

under the circumstances, must not offend traditional notions of fair play and substantial justice.  *Asahi*

*Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92

(1987);  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985);

*Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784 (5th Cir.1990).

      The minimum contacts may result in either specific or general jurisdiction:

> When a cause of action arises out of a defendant's purposeful contacts with the forum,
> minimum contacts are found to exist and the court may exercise its "specific" jurisdiction.
> Even a single, substantial act directed toward the forum can support specific jurisdiction.
> Where a cause of action does not arise out of a foreign defendant's purposeful contacts with
> the forum, however, due process requires that the defendant have engaged in "continuous and
> systematic contacts" in the forum to support the exercise of "general" jurisdiction over that
> defendant.... [C]ontacts of a more extensive quality and nature are required.

*Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361–62 (5th Cir.1990) (citation omitted);  *see also*

*Burger King.*  The district court found both general and specific jurisdiction.  We agree that specific

jurisdiction is extent and thus look no further.

      At the threshold we seek the place where the contract is to be performed.  That is a weighty

---

[1]*De novo* review is appropriate where the material facts are not in dispute.  *Bullion v.
Gillespie,* 895 F.2d 213 (5th Cir.1990).  The affidavits in this record reveal factual disputes only
on inconsequential points not relevant to today's disposition.

consideration. *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061 (5th Cir.1992). If, however, the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight necessarily is diminished. *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003 (5th Cir.1982). It is clear that the OMS president traveled to Texas for the purpose of tailoring the pump manufacture to the needs of OMS and that it took possession of the goods in Texas. The selection of the Texas situs was not entirely a unilateral decision by Command–Aire. OMS, which had dealt with Command–Aire for several years, purposefully engaged the Texas manufacturing facility and dealt with its personnel there. We also deem relevant the place of contracting, the law governing the contract, and the place at which title to the goods passed. *Jones* (discussing place of contract and governing law); *Bearry* (technicality of when title passes to goods is relevant in analyzing general personal jurisdiction questions). An agreement to mail payment checks into the forum state also may be given some consideration. *See Stuart v. Spademan,* 772 F.2d 1185 (5th Cir.1985) (noting that this factor does not weigh heavily). The final sales agreement provided that OMS would take possession of the goods in Texas; therefore, title passed in that state. Tex.Bus. & Com.Code § 2.401 (Title passes at "the time and place at which the seller completes performance with reference to the physical delivery of the goods[.]"). Texas was also the place of payment. *See* Tex.Bus. & Com.Code § 2.310 (place of payment where buyer receives goods).

OMS urges as "factually indistinguishable," our decision in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). We do not perceive that decision as controlling the instant dispute. In *Hydrokinetics* a nonresident buyer contracted to purchase equipment made in Texas for installation in the buyer's state. Notwithstanding that the goods were manufactured in Texas, payment was to be made in Texas, and the buyer's representatives traveled to Texas to close the contract, we found personal jurisdiction lacking. Of import in the *Hydrokinetics* analysis, however, was the fact that the nonresident buyer, who did not regularly engage in business in any state but its own, was approached

in its home state by the seller's representatives. The initial negotiations were exclusively in the buyer's state; it was not until later that any part of the contracting process migrated to Texas. The fact that the transaction was concluded in Texas was not considered dispositive because the agreement the parties reached provided that the law of the buyer's state was controlling. By contrast, OMS had an ongoing relationship with Command–Aire and initiated discussion, negotiations, and the ultimate contract respecting the sale. All in-person negotiations for the contract occurred outside of Canada and the parties agreed that Texas law would control the sales contract. In this setting we cannot discount, as we did in *Hydrokinetics,* the travel to Texas by the OMS president to deal with a critical part of the contract.

Even if minimum contacts exist, the exercise of personal jurisdiction over a nonresident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends traditional notions of fair play and substantial justice. *Asahi Metal Industry Co. v. Superior Court of California.* This assessment requires examination of the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the shared interest of the several states in furthering fundamental social policies. Although the Texas forum may be less convenient for OMS than a Canadian one, OMS freely contracted to litigate the dispute in Texas and its representatives had traveled to the Command–Aire facility there. Not only does Command–Aire have an interest in receiving payment for its goods, but Texas has a legitimate interest in providing an effective means of redress for the failure by OMS to pay. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

OMS complains that Command–Aire did not prove personal jurisdiction at trial. This argument is misplaced. Unless the district court orders otherwise, a motion urging lack of personal jurisdiction ordinarily is addressed before trial. *See* Fed.R.Civ.P. 12(d). The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. *Stuart.* The disposition of this issue

by the district court was entirely appropriate.

2. *Forum Non Conveniens*

We review the district court's *forum non conveniens* determination for abuse of discretion. *Hotvedt v. Schlumberger Ltd.,* 942 F.2d 294 (5th Cir.1991) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). In considering the propriety of dismissal on a *forum non conveniens* basis the court must first determine that there is an adequate alternative forum and must then balance the private and public interest factors. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). District courts ordinarily should respect a plaintiff's forum choice. *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.,* 955 F.2d 368 (5th Cir.1992); *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285 (5th Cir.1989). Convenience is at the heart of the inquiry. *Empresa Lineas Maritimas.* The district court assumed that Canada was an adequate alternative forum but, after weighing the factors, determined that the private factors weighed in favor of trial in Texas. The district court rejected OMS's blanket and unsubstantiated assertion that most of the witnesses are in Canada and concluded that it would be equally inconvenient for Command–Aire to prosecute the suit in Canada as it was for OMS to defend in the Texas forum. Although the heat pumps allegedly malfunctioned in Canada, the ultimate design and manufacture of the product, the delivery of the product to OMS's agent, and the one in-person meeting to engineer the product, all occurred in Texas. We find no abuse of discretion in the district court's refusal to dismiss on the *forum non conveniens* basis.

3. *Continuance*

We review the district court's decision to deny a motion for continuance for abuse of discretion. *Johnston v. Harris County Flood Control District,* 869 F.2d 1565 (5th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986). That discretion is "exceedingly wide." *Fontenot,* 780 F.2d at 1193.

OMS was allowed three continuances and sought a fourth on the day of trial, solely on the basis of a letter from a doctor advising the president of OMS not to leave the immediate vicinity of his home in Toronto until further notice. The letter contained no suggestion of when or if the gentleman would be available for trial. The letter is bereft of any explanation of the doctor's treatment or the basis for diagnosis. Barbesin had been released from his voluntary commitment several months before the July trial date. On the day of trial, the court questioned Barbesin's efforts to assist his attorney in the case:

> COURT: Am I correct, Mr. Tekell, that this is the case where your client keeps telling you, "Don't call me, I'll call you when I'm prepared to do that?"
>
> MR. TEKELL: Well, that has happened on occasion.

We decline to substitute our judgment about the necessity and propriety of a continuance for that of the district court. A trial court is not required to delay a case indefinitely based on the incapacity of a witness especially where, as here, it is unknown when or if the witness will ever be available to appear. *See Johnston,* 869 F.2d at 1570–71. If Barbesin could not leave his home, then OMS should have proffered his testimony by deposition. *See Wells v. Rushing,* 755 F.2d 376 (5th Cir.1985).

4. *Sanction*

We review an award of sanctions for abuse of discretion. *John v. Louisiana,* 899 F.2d 1441 (5th Cir.1990). The district court is empowered to sanction a party's failure to obey a discovery order by striking pleadings. Fed.R.Civ.P. 37(b)(2)(C).

After denying previous motions for sanctions for OMS's failure to comply with discovery, the district court finally struck all OMS pleadings not related to the personal jurisdiction and *forum non conveniens* issues as a sanction for its failure to answer September 1990 interrogatories or comply with the litigant's discovery deadline. The OMS argument claiming abuse of discretion is based on its unsubstantiated allegation that in July of 1991 the OMS president was still unable to

confer with counsel. Although leniency is afforded parties who are not able to comply with a discovery order, *see* C. Wright & A. Miller, 8 *Federal Practice and Procedure* § 2284 at 766 (1970), we consistently have affirmed the sanction of dismissal where failure to comply is willful. *See Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030 (5th Cir.1990); *Truck Treads, Inc. v. Armstrong Rubber Co.,* 818 F.2d 427 (5th Cir.1987) (incomplete and evasive answers); *Bluitt v. Arco Chemical Co.,* 777 F.2d 188 (5th Cir.1985). The district court was not obliged to accept Barbesin's refusal to consult with his attorney as an adequate reason for failing to comply with court orders.

For the reasons assigned, the judgment of the district court is AFFIRMED.