AMERICAN AIRLINES, INC.

v.

ROGERSON ATS and Rogerson Aircraft Corporation

and

ROGERSON ATS

v.

ENGINEERED FABRICS CORPORATION.

Civil Action Nos. 4:95–CV–236–Y, 4:96–CV–145–Y.

United States District Court, N.D. Texas, Fort Worth Division.

May 2, 1996.

Donald Edward Herrmann, Barbara Eileen Prats Neely, Kelly, Hart & Hallman, Fort Worth, TX, for Plaintiffs.

John Joseph Marek, Law Office of John J. Marek, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

MEANS, District Judge.

Pending before the Court are Defendants' Motion to Dismiss, filed April 10, 1995 (doc. # 3), and Amended Motion to Dismiss, filed April 28, 1995 (doc. # 6). Defendants Rogerson ATS ("ATS") and Rogerson Aircraft Corporation ("RAC") have moved to dismiss for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and improper venue. The Court held a hearing on these motions on April 1, 1996. Having carefully considered the motions, the supporting and opposing briefs, the evidence, and the applicable law, the Court finds that the Motions to Dismiss should be DENIED.

### I.  Background Facts

Plaintiff American Airlines, Inc. ("American") and ATS entered into a contract ("the Contract") on January 11, 1991. Defendant RAC was not a party to the Contract. Under the Contract, ATS was to modify the fuel systems on American's 767 aircraft to provide extended flying range. American brought suit against ATS and RAC in a Texas state court for breach of contract, and the defendants removed to this Court.

RAC and ATS are California corporations with their principal places of business in California. ATS is a wholly owned subsidiary of RAC and they share the same office building. Michael J. Rogerson is the president of both ATS and RAC. (Rogerson Aff. at 1.) At the time the Contract was signed, Stanley Balter was vice-president and general manager of ATS, and occupied ATS's highest corporate position, reporting directly to officials of RAC. (Tr. at 75.) Balter was subsequently transferred to RAC but was still assigned as the general manager of ATS. (Tr. at 76.)

From March 1987 through January 1991, RAC maintained an employee and a place of business in Texas. John Atkins was the director of marketing for RAC and maintained his office in his home in Hurst, Texas and then at his home in Keller, Texas. (Tr. at 16–17.) Atkins conducted business in the State of Texas on behalf of RAC and all of its divisions, including ATS.[1] (Tr. at 17.) Atkins was contacted by RAC in Texas, hired in Texas, and was paid in Texas by wire transfer or mail from California. (Tr. at 18.) His duties including contacting RAC and ATS customers and potential customers in Texas and surrounding states, and visiting those customers at their places of business. During Mr. Atkins's tenure with RAC, the company did a substantial amount of business with companies in the State of Texas.[2] RAC and ATS advertised in Texas by sending marketing materials to Atkins who then used them in his marketing efforts.[3] (Tr. at 24.) RAC personnel also came to Texas on numerous occasions to assist Atkins in marketing and in negotiating particular deals. (Tr. at 24.)

The Contract between American and ATS was signed on January 11, 1991 in Tulsa, Oklahoma by representatives of American and ATS. ATS was to manufacture extended range fuel bladders to be installed in five American 767 aircraft. Installation of the fuel bladders was to take place in Everett, Washington or in another place of American's choosing. The American facility at Alliance Airport in Fort Worth, Texas was not complete at the time the Contract was signed; however, American retained the option under the Contract to perform the installation itself at the Alliance facility. (Tr. at 50, 57.) The installation was performed at Alliance by American personnel, with the assistance of Rogerson employees.[4] While most of the personnel assisting with the installation were employees of ATS, at least one, W. Ron Keller, was an employee of RAC. (Pekny Aff. at 2.) Furthermore, at least one meeting concerning the Contract took place at the Alliance facility in Texas, between officials of American, ATS, and RAC. Mr. Atkins was present at this meeting and presented himself as an employee of RAC with a business address in Texas. (Pekny Aff. at 2.)

The Contract has two clauses dealing with a potential breach-of-contract lawsuit. Section 33 provides that: "In the event of a dispute involving the provisions of this order, either American or Rogerson ATS shall have such rights and remedies as may be determined by a court of competent jurisdiction." Section 36 provides that: "This Agreement shall be construed and governed according to the laws of the State of Texas. Rogerson ATS hereby submits to the jurisdiction and venue of the courts of the State of Texas with respect to all disputes arising hereunder."

American's discovery of fuel leaks in the bladders supplied by ATS under the Contract led it to sue ATS and RAC for breach

---

1. RAC has at least twelve subsidiaries, each of which sells a different product line. ATS, for instance, stands for "Auxiliary Tank Service" and sells auxiliary fuel tank systems. Other subsidiaries sell electronics, valves, and so forth. (Tr. at 17, 77–78.) It is unclear to the Court from the record as a whole whether RAC itself had a product line, or whether it was simply a central corporate structure through which its subsidiaries operated.

2. Atkins testified that he conducted business on behalf of RAC and its divisions with several companies with operations in Texas, including Bell Helicopter, Boeing Electronics, Chrysler, General Dynamics, American Airlines, Continental Airlines, Southwest Airlines, Texas Instruments, and others. (Tr. at 21.) Atkins further testified that Bell Helicopter and Boeing Electronics alone accounted for more than a million dollars in annual sales for RAC and its divisions, and that RAC and its divisions had between 10 and 15 million dollars of sales during the time that Atkins worked for RAC. (Tr. at 23.)

3. This marketing in Texas has continued through the present. Atkins testified that "in the last few weeks," he had attended a trade convention in Dallas, Texas at which RAC advertised its products at one of the largest booths. (Tr. at 25–26.)

4. Federal Aviation Administration regulations required that the designers of the airplane modifications inspect the installation of that equipment in order to obtain F.A.A. certification. (Tr. at 65–69.) ATS was, therefore, required under the contract to assist with inspection, testing, and certification of the fuel bladders. At various times during the installation process, there were up to four Rogerson employees at the Alliance facility. (Tr. at 66.)

of contract. ATS and RAC contend that the breach was cause by another corporation, Engineered Fabrics Corporation ("Engineered Fabrics"). Engineered Fabrics contracted with RAC to supply extended range fuel tanks for delivery to American. After the filing of this suit, ATS sued Engineered Fabrics in this Court. By order dated April 30, 1996, that case (Civil Action No. 4:96–CV–145–Y) has been consolidated with American's case against ATS and RAC.

## II. Personal Jurisdiction

In a federal diversity suit, a nonresident defendant is subject to personal jurisdiction to the extent permitted by the laws of the forum state and constitutional due process. *Command–Aire Corp. v. Ontario Mechanical Sales & Serv. Inc.,* 963 F.2d 90, 93 (5th Cir.1992). The Texas Long Arm statute reaches as far as is constitutionally permissible, therefore, the personal jurisdiction question is simply a constitutional due process inquiry. *Id. See also U–Anchor Advertising v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). This inquiry has two components: "(1) the defendant purposefully must have established minimum contacts with the forum state, invoking the benefits and protections of that state's laws and, therefore, reasonably could anticipate being haled into court there; and (2) the exercise of personal jurisdiction, under the circumstances, must not offend traditional notions of fair play and substantial justice." *Command–Aire,* 963 F.2d at 94.

One of the principle goals of this inquiry is to protect the defendant and the central focus must be on the defendant's intentional actions and expectations. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). The consideration of whether due process is satisfied "must depend on the quality and nature of a defendant's activity in relation to the fair and orderly administration of the laws, which it was the purpose of the due process clause to insure." *Crown Sterling, Inc. v. Clark,* 815 F.Supp. 199, 202–03 (N.D.Tex.1993). The burden of proving personal jurisdiction lies with the party seeking to invoke the Court's jurisdiction. *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). However, any disputes over jurisdictional facts must be resolved in favor of that party. *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993).

There are two types of personal jurisdiction: specific and general. Specific jurisdiction exists when the cause of action arises out of the defendant's purposeful contacts with the forum state, and even a single substantial act directed toward the forum can support it. *Command–Aire,* 963 F.2d at 94. In order to determine whether specific jurisdiction over a corporation exists, "a court must consider: (1) the quality, nature, and extent of the activity in the forum; (2) the foreseeability of consequences within the forum from outside activities; and (3) the relationship between the contacts and the alleged cause of action." *Luna v. Compania Panamena De Aviacion, S.A.,* 851 F.Supp. 826, 832 (S.D.Tex.1994) (*citing Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983)). General jurisdiction, which is required when the cause of action is unrelated to the defendant's contacts with the forum, requires "continuous and systematic contacts" with the forum. *Command–Aire,* 963 F.2d at 94.

Even if the appropriate minimum contacts exist, the exercise of personal jurisdiction over a nonresident defendant fails to satisfy due process if the assertion of jurisdiction offends traditional notions of fair play and substantial justice. *Id.* In assessing fundamental fairness, the Court must consider "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Ruston Gas Turbines,* 9 F.3d at 421.

### A. Specific Personal Jurisdiction
#### 1. Rogerson ATS

The Court begins its analysis with the place where the contract is to be performed. The Contract, by its terms was to be per-

formed in California and Washington or a place of American's choosing. The Contract in fact was performed in California and Texas. In the personal jurisdiction analysis, great weight is given to the place of performance. *Command–Aire*, 963 F.2d at 94. However, if the decision to perform in the forum state was the unilateral decision of the plaintiff seeking to establish personal jurisdiction, that weight is diminished. *Id.* The Court finds that while the decision to install the fuel bladders in Texas was the unilateral decision of American, American's right to make that decision was bargained for by American and consented to by ATS. The Court finds that the clause allowing American to choose an alternative installation site was added in contemplation of the completion of American's Alliance facility in Texas. The Court further finds that ATS knew that the installation would be performed in Texas if the facility there was completed and, therefore, knew that performance in Texas would likely be required of them. The Court will not give diminished weight to the fact that performance under the contract occurred in Texas in its personal jurisdiction analysis.

The Court finds that ATS personnel worked in Texas at the Alliance facility for an extended period of time. This included American's assigning a portion of its facility to which only ATS and RAC employees had access. (Tr. at 67.) The aircraft parts were delivered to ATS and RAC personnel at this area and were held there until ATS and RAC approved them for installation. (Tr. at 67.) The Court further finds that at least one meeting concerning the Contract took place in Texas between officials of American, ATS, and RAC.

■ The Contract had an explicit forum-selection and choice-of-law clause which required the parties to the Contract to litigate contractual disputes in Texas using Texas law. ATS was a signatory to this Contract. The Court finds that the forum-selection and choice-of-law clause is unambiguous and that the parties to the Contract consented to the jurisdiction of the courts within the State of Texas and consented to the application of Texas law to the Contract.[5] The Court further finds that ATS expected or should have expected that any dispute concerning the Contract would be litigated in Texas.[6]

■ The contacts between ATS and the State of Texas are sufficient to establish specific personal jurisdiction over ATS in Texas. These were contacts purposefully directed at the State of Texas by ATS; it was foreseeable that any consequences from these contacts would likely occur in Texas; and the contacts are directly related to the cause of action brought by American.

■ The Court finds that the exercise of personal jurisdiction over ATS does not offend the traditional notions of fair play and substantial justice. ATS consented to jurisdiction in Texas, and the Court finds that this consent alone is sufficient to satisfy the fundamental fairness of the personal jurisdiction analysis. The Court, therefore, holds that it has specific personal jurisdiction over ATS.

## 2. Rogerson Aircraft Corporation

■ RAC was not a signatory to the Contract, and was therefore not bound by its

---

**5.** While the Court will not begin and end its analysis of personal jurisdiction with the issue of consent, even if the forum-selection clause was ATS's only contact with the State of Texas, the Court would be inclined to hold that specific personal jurisdiction exists. A party who consents to jurisdiction in a forum-selection clause should not later be able to claim that such jurisdiction violates due process. *See Wilmot H. Simonson Co. v. Green Textile Assocs., Inc.*, 554 F.Supp. 1229, 1232 (N.D.Ill.1983).

Jurisdiction by consent satisfies the requirements of due process. Where forum selection clauses "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985) (citations omitted). The Court finds that the Contract was freely negotiated and concludes that enforcement of the forum-selection clause would not be unfair or unjust to ATS. In fact, failure to enforce the forum-selection clause would be unfair and unjust to American.

**6.** ATS claims the it "fully expected California law to govern matters arising under the Contract at the time it was signed." (Plaintiffs' Amended Joint Motion to Dismiss ¶ 23). ATS's claim seems disingenuous in light of the plain language of section 36 of the Contract.

terms, including the forum selection clause. However, the Court finds that RAC had significant contacts with the State of Texas that directly relate to the Contract. RAC employees participated directly in the performance of the Contract in Texas. RAC employees also participated in the meeting that took place in Texas, as well as in other meetings regarding the Contract. It was an RAC employee, Mr. Atkins, who solicited business, including American's business, in Texas for RAC and ATS.[7]

Perhaps most significant is the fact that when American sent a notice of default under the Contract to ATS, the return correspondence came from RAC. RAC sent numerous letters to American concerning RAC's efforts to rectify the problems identified by American. These letters were written on RAC letterhead and were from J.T. Knox, RAC's "Director, Contracts." Furthermore, in the Contract itself, ATS is identified as a division of RAC and then describes RAC as a California corporation. It appears to the Court that even though RAC did not formally sign the Contract, the actions of RAC personnel indicated that they either intended to be bound by the Contract, or that they were responsible for the performance of ATS.

The contacts between RAC and Texas are sufficient to establish specific personal jurisdiction over RAC in Texas. The Court finds that the contacts were purposefully directed at Texas and that it was foreseeable that these contacts would have consequences in Texas. The Court further finds that RAC's contacts with the State of Texas are directly related to the breach of contract claim brought by American and that RAC could reasonably anticipate being haled into court in Texas.

The Court finds that the exercise of personal jurisdiction over RAC does not offend traditional notions of fair play and substantial justice. The defendant is a multi-million-dollar corporation whose burden in litigating in Texas will be minimal. Texas has an interest in adjudicating a dispute involving the sale of products to a corporation based in Texas and American has an interest in obtaining convenient and effective relief in the state where it intended any dispute concerning the Contract to be litigated. Furthermore, Texas law is to govern the Contract, and the Court finds that a Texas forum would be most conducive to an efficient resolution of this controversy. The Court, therefore, holds that it has specific personal jurisdiction over RAC.

## B. General Personal Jurisdiction

In addition to the above-described contacts, RAC and ATS had contacts with the State of Texas that do not relate directly to American's cause of action. From 1987 to 1991, RAC maintained a place of business and at least one employee in Texas.[8] This employee, Atkins, solicited business in Texas on behalf of both RAC and ATS on the express instructions of his superiors at RAC. Atkins distributed marketing literature (advertisements) for both RAC and ATS in Texas, and attended business conventions in Texas to solicit business on behalf of RAC and ATS.

RAC employees made regular visits to Texas to assist Atkins in soliciting business or to close deals with clients. RAC and its divisions have sold millions of dollars worth of products to their Texas clients and delivered those products to their clients in Texas.[9] RAC and its divisions continue to do business in Texas, and continue to solicit business in Texas.

7. Mr. Atkins testified that he solicited business for ATS, including American's business, in Texas, but that the Contract "was closed in Tulsa." (Tr. at 30.) The Court finds that the fact that the Contract was signed in Oklahoma, while relevant, does not mean that the solicitation of American's business in Texas is not a contact with Texas that relates to the Contract.

8. The fact that the place of business was Mr. Atkins's home is irrelevant. Mr. Atkins was an employee of RAC based in Texas. RAC knew, and presumably sanctioned and subsidized Atkins's use of his home as his office, and Atkins held out his home as a place of business for RAC. Atkins had a business phone line at his home and had business cards that had "Rogerson Aircraft Corporation" and his home address on them.

9. By Mr. Atkins's estimate, 30 percent of Rogerson's domestic sales were in Texas. (Tr. at 22.)

The Court finds that the RAC's contacts with the State of Texas on its own and ATS's behalf, and ATS's own contacts with Texas were continuous and systematic and are sufficient to support general personal jurisdiction. These contacts were purposefully' directed at the State of Texas and both RAC and ATS could have reasonably anticipated that their activities in Texas would subject them to being haled into court in Texas. Since the Court has already found that the exercise of jurisdiction over RAC and ATS does not offend the traditional notions of fair play and substantial justice, the Court finds that it has general personal jurisdiction over ATS and RAC.

### III. Insufficiency of Process and Service of Process

Defendants also move to dismiss on the grounds of insufficiency of process and insufficiency of service of process, asserting that the Court lacks jurisdiction over them. Defendants have not contested the sufficiency of process or service of process on any grounds other than lack of jurisdiction. The Court has already found that it has personal jurisdiction over both RAC and ATS, therefore, the Court finds that the defendants' Motion to Dismiss for Insufficiency of Process and Insufficiency Service of Process should be DENIED.

### IV. Improper Venue

Defendants have moved to dismiss for improper venue under 28 U.S.C. § 1391(a). Pursuant to § 1391(a)(1), venue is proper in any district where any defendant resides if all defendants reside in the same state. Under § 1391(c), for venue purposes, a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time that the action was commenced. Since the Court has already found that it has personal jurisdiction over both defendants, and the bulk of the defendants' contacts with Texas are in the Northern District of Texas,[10] the corporate defendants are deemed to reside in the Northern

District of Texas. The Court therefore holds that venue is proper in the Northern District of Texas.

### V. Transfer of Venue

█ RAC and ATS have alternatively moved the Court to transfer this case to the Central District of California. A motion to transfer venue is governed by 28 U.S.C. § 1404(a). Subsection (a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether to transfer venue, the Court must consider several factors: (1) Plaintiff's choice of forum; (2) the availability of witnesses and convenience of parties; (3) the cost of obtaining the attendance of witnesses and other trial expenses; (4) the location of counsel; (5) the location of books and records; (6) the place of the alleged wrong; and (7) the possibility of delay and prejudice if transfer is granted. *Bevil v. Smit Americas, Inc.*, 883 F.Supp. 168, 170 (S.D.Tex.1995); *Hupp v. Siroflex of America, Inc.*, 848 F.Supp. 744, 748 (S.D.Tex. 1994).

The defendants bear the burden of proving that a transfer of venue is appropriate, *Hupp*, 848 F.Supp. at 748, however, the decision on whether to transfer venue is within the sound discretion of the district court. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988); *Mortensen v. Maxwell House Coffee Co.*, 879 F.Supp. 54, 56 (E.D.Tex.1995). The Court finds that the defendants have failed to satisfy their burden of justifying a transfer of venue.

█ The plaintiff's choice of forum is the primary factor for a court to consider in deciding a motion to transfer venue. *Box v. Ameritrust Texas, N.A.*, 810 F.Supp. 776, 781 (E.D.Tex.1992). American chose to file this suit in this Court and the Court will not overturn that decision lightly. The other factors in the venue-transfer analysis are either neutral or favor retaining venue in

---

**10.** American's Alliance facility is located in Tarrant County, Texas, in the Northern District of Texas.

Texas. Witnesses are located in both Texas and California as well as other states, and the availability of witnesses and the convenience of their location would be problematic in either state. Furthermore, regarding this factor, "[t]he moving party must do more than make a general allegation that certain key witnesses are not available or are inconveniently located." *Bevil v. Smit Americas, Inc.*, 883 F.Supp. 168, 170 (S.D.Tex.1995). "The movant must specifically identify the key witnesses and outline the substance of their testimony." *Id.* The defendants have failed to make such a showing and, therefore, the Court finds that this factor favors venue in Texas. RAC and ATS have also failed to make a credible showing that the cost of obtaining the attendance of witnesses and other trial expenses would be lower for all parties in California or that most of the documents relating to this action are located in California. (Rogerson Aff. at ¶ 24.)

 In determining venue for a breach of contract action, the place of performance has particular importance. RAC and ATS argue that performance occurred in California and Washington. The Court agrees that performance occurred California but the Court has previously found that performance under the Contract also took place in Texas. RAC and ATS have offered no evidence to support their assertion that performance occurred in Washington. Furthermore, ATS and RAC have failed to show either that performance did not occur in Texas, or that the performance that did occur in Texas is somehow outweighed by the performance that occurred in California. This factor does not favor a transfer of venue to California.

The Court finds that the remaining factors all favor retaining venue in Texas. Counsel for all parties are located in Texas. There is a substantial possibility of delay if this action is transferred to California since this Court has had the case for some time and is already familiar with many of its details. Further, the Court has already entered an initial

---

**11.** The Court also denies Defendants' Motion to Transfer Venue as to ATS on the grounds that ATS consented to venue in Texas in the forum-selection clause in the Contract. The Court holds that a forum-selection clause in a contract,

---

scheduling order in this case and a transfer would disrupt that schedule.

The defendants have not proven that transfer to the Central District of California is appropriate. Therefore, the Court finds that the defendants Alternative Motion to Transfer Venue should be DENIED.[11]

## VI. Conclusion

For the above-stated reasons, the Court finds that it has personal jurisdiction over the defendants and that venue is proper in the Northern District of Texas. It is, therefore, ORDERED that Defendants' Motion to Dismiss and Amended Motion to Dismiss are hereby DENIED.

SO ORDERED.

without more, waives a party's right to contest venue under 28 U.S.C. § 1404(a). *See generally Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).