# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 10, 2010

No. 09-10528
Summary Calendar

Charles R. Fulbruge III
Clerk

cons w/09-10782

ANITA JOHNSON,

Plaintiff–Appellant

v.

JOHN E. POTTER, Postmaster General,

Defendant–Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CV-2287

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Appellant Anita Johnson sued Appellee John E. Potter, Postmaster General, and the United States Postal Service (the "USPS"), for disability discrimination related to her Reflex Sympathetic Dystrophy ("RSD"), a disorder of the autonomic nervous system.  On the morning the trial was scheduled to

---

[*] Pursuant to Fifth Circuit Rule 47.5, we have determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.

No. 09-10528
c/w 09-10782

begin, the district court received Johnson's motion to continue the trial. The district court denied the motion and proceeded with the trial. Later, the district court denied Johnson's motion for relief from judgment under Federal Rule of Civil Procedure 60(b). On appeal, Johnson argues that the district court abused its discretion in denying her motions. Because we find that the district court did not abuse its discretion, we AFFIRM.

## I. BACKGROUND

Originally, the district court set this case for trial on March 2, 2009. Johnson's attorney filed a motion to continue, and the district court continued the trial until March 23, 2009. Johnson made a settlement offer, which the USPS accepted on March 16, 2009. However, Johnson and her attorney apparently had a falling out. Johnson withdrew from the settlement and refused to communicate with her attorney. On March 30, 2009, Johnson filed a motion for extension of time to find new counsel. Johnson's attorney filed a motion to withdraw as counsel.

The district court set a hearing on both motions on April 2, 2009. In its scheduling order, the district court explicitly ordered Johnson to attend the hearing. As per Johnson's prior instructions, the district court contacted Johnson at two separate telephone numbers to inform her of the hearing. However, Johnson did not attend. At the hearing, the district court granted the motion to withdraw and rescheduled the trial date for April 16, 2009.

On April 15, 2009, Johnson filed a document explaining that her RSD had flared up, and requesting time to convalesce and retain new counsel. Attached to the document was a fax from her doctor which stated:

> Anita Johnson currently remains 100 percent totally disabled and will remain In [sic] this capacity until further notice. The patient is precluded from even menial/sedentary type tasks secondary to pain sufficient to distract the concentration level, as well as inability

2

No. 09-10528
c/w 09-10782

to remain In [sic] one position for any substantial length of time. . . .
In summary, this patient is unable to perform any type of duties on
a regular basis and therefore is not competent to represent herself
in court.

The court did not receive the document until the morning of April 16, 2009. At no time prior to filing the document did Johnson make any effort to contact the court or the USPS to notify them that she would be unable to attend the trial.

After reviewing the note from Johnson's doctor, the district court observed that the note seemed to describe Johnson's chronic underlying condition rather than an acute flare-up, and did not give specific reasons why Johnson was unable to attend the trial on that day. Further, the district court stated that the note did not say when, if ever, Johnson would be available for trial in the future.

The court declined to postpone the trial, explaining that postponement would require either setting an artificial trial date without knowing whether Johnson would be able to attend, or postponing the trial indefinitely until Johnson told the court when she would be able to attend; that the court had already postponed the trial once at Johnson's request; that Johnson had already missed a hearing which the court had specifically ordered her to attend; that the parties had been prepared to settle the case until Johnson backed out at the last minute; that the case was not complex and that Johnson seemed able to represent herself; and that the court had a congested docket, and the case was more than three years old.

The court proceeded with the trial. Because Johnson was not present, the court entered judgment in favor of the USPS and dismissed the case. Johnson filed a Rule 60(b) motion for relief from judgment. The court denied the motion, explaining that Johnson had consistently disregarded the court's orders and that

3

No. 09-10528
c/w 09-10782

Johnson's failure to attend trial was not an isolated incident.  Johnson timely appealed.

## II.  ANALYSIS

We have jurisdiction under 28 U.S.C. § 1291.

### A.    Johnson's Motion to Continue the Trial

We review the district court's denial of a motion to continue for abuse of discretion.  *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1570 (5th Cir. 1989); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986).[1] The district court's discretion is "exceedingly wide."  *Fontenot*, 780 F.2d at 1193.

In *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, Ontario Mechanical Sales ("OMS") sought and received three continuances after its president was hospitalized for psychiatric reasons.  963 F.2d 90, 93 (5th Cir. 1992).  On the day of trial, OMS sought a fourth continuance, submitting a doctor's note that said its president was again unavailable.  *Id.*  The district court denied the continuance and proceeded to trial.  *Id.*  We affirmed the district court's ruling.  *Id.* at 96.  In doing so, we noted that OMS sought a continuance "solely on the basis of a letter from a doctor advising the president of OMS not to leave [his home] until further notice," and that "[t]he letter contained no suggestion of when or if the [president] would be available for

---

[1] Johnson cites *Smith-Weik Machinery Corp. v. Murdock Machine and Engineering Co.*, arguing that we should apply a less deferential standard because "[a]n exception . . . exists in certain cases when the illness of counsel is the ground for a continuance."  423 F.2d 842, 845 (5th Cir. 1970).  We have consistently held that *Smith-Weik* explores a facet of the abuse of discretion standard rather than articulating a different standard for cases involving an attorney's illness.  *See, e.g.*, *Charles v. Rice*, No. 93-8062, 1993 WL 307892, at * 3 (5th Cir. Aug. 6, 1993) (citing *Smith-Weik* in applying the abuse of discretion standard); *Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 572 (5th Cir. 1992) (citing *Smith-Weik* for the proposition that motions to continue should be reviewed under an abuse of discretion standard); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) (noting that *Smith-Weik* applies an abuse of discretion standard).  Accordingly, we apply an abuse of discretion standard in this case.

trial." *Id.* We stated that "[a] trial court is not required to delay a case indefinitely based on the incapacity of a witness especially where, as here, it is unknown when or if the witness will ever be available to appear." *Id.* Accordingly, we "decline[d] to substitute our judgment about the necessity and propriety of a continuance for that of the district court." *Id.*

In *Johnston*, defendant Harris County Flood District ("HCFD") requested a continuance fifteen days before trial on the ground that Jordan, one of the individual defendants, had suffered a heart attack. 869 F.2d at 1570. The court denied the motion. *Id.* On the first day of trial, HCFD again requested a continuance, presenting the court with a letter from Jordan's physician saying that postponing the trial for one month would be beneficial to Jordan's health. *Id.* The court denied the motion, in part because the physician did not know when Jordan would be able to testify. *Id.* Although the court began the trial without Jordan, the court held open the evidence until Jordan could testify. *Id.*

In affirming the district court's ruling, we stated that "[t]he grant or denial of a continuance is within the sound discretion of the trial court . . . [and we] will reverse the denial of a continuance 'only when the action is, to use the conventional term, an abuse of discretion.'" *Id.* (quoting *Fontenot*, 780 F.2d at 1193) (internal quotation marks omitted). We found that the defendants suffered little or no prejudice because the remaining defendants could assist HCFD's counsel in cross-examination and rebuttal, because continuing would have resulting in a delay of about six months, and because the court made significant efforts to accommodate Jordan by holding open the evidence until he could testify. *Id.* at 1570–71.

In *Smith-Weik*, principal counsel for defendant Murdock became ill with the flu. 423 F.2d at 843 n.1. Principal counsel notified local counsel, as well as local and principal counsel for Smith-Weik. *Id.* The case was number seventeen

on the district court's non-jury docket for February 10, 1969. Because the case was low on the district court's docket, counsel felt confident it would not be called on February 10. *Id.* However, the district court granted Smith-Weik's untimely demand for jury trial over Murdock's objection, placing the case fourth on the court's jury docket. *Id.* This change had the practical effect of unexpectedly advancing the trial date for the case. *Id.*

Murdock advised the court that principal counsel was sick and that Murdock would need time for his witnesses, who lived outside the area, to travel to the courthouse. *Id.* The court moved on to other matters, and Murdock believed the trial would not start before February 17 at the earliest. *Id.* However, on February 13, Murdock's local counsel was called to the courthouse and told that the trial would begin in four hours. *Id.* Local counsel moved to continue the trial until February 17, explaining that he was not adequately prepared to try the case without principal counsel. *Id.* The court denied the motion, stating that the plaintiffs and their counsel had been in town awaiting trial since February 10. *Id.* Murdock's local counsel moved for a continuance until the next morning so he could fly to Tulsa to confer with principal counsel. *Id.* The court denied the motion, and the case proceeded to trial. *Id.* After the trial, the jury returned a verdict for Smith-Weik. *Id.* On appeal, we concluded that the district court had abused its discretion, and we reversed. *Id.* at 844–45.

The instant case is analogous to both *Command-Aire Corp.* and *Johnston*. Johnson sought a continuance solely on the basis of a letter from her doctor, and the letter gave no indication when, if ever, Johnson would be available for trial. If the district court had not denied the motion, it might have waited indefinitely for Johnson to be ready for trial. Also like in both *Command-Aire Corp.* and *Johnston*, here the district court had already continued the trial to accommodate Johnson.

6

No. 09-10528
c/w 09-10782

In contrast, this case is distinguishable from *Smith-Weik* for several reasons. First, in *Smith-Weik* Murdock asked the district court to continue the trial for a short time—one week—so that principal counsel could recover from the flu, a condition which almost always disappears in a matter of days. In the instant case, the note supplied by Johnson's doctor does not say that she will *ever* be well enough to attend trial. Further, there is no indication that the district court in *Smith-Weik* had previously continued the trial at Murdock's request. In fact, the district court effectively advanced the trial date when it moved the case from its non-jury docket to its jury docket and assigned the case a high number. In contrast, in the instant case Johnson already caused the trial to be continued twice, once when her attorney was ill and once when Johnson withdrew from the settlement. Further, the district court never advanced the trial date.

Of course, there is no question that the district court's ruling in this case was much more prejudicial than the district court's ruling in either *Command-Aire Corp.* or *Johnston*. In those cases, attorneys were able to present their cases despite the absence of additional counsel or parties who, while certainly important, were not integral to the litigation's ongoing viability. In stark contrast, here Johnson was proceeding *pro se* when the district court denied her motion to continue. Thus, the denial was tantamount to a default judgment.

Although the district court's denial was obviously extremely prejudicial to Johnson, we cannot say that the district court acted outside its "exceedingly wide" discretion when it denied Johnson's motion to continue. *Fontenot*, 780 F.2d at 1193. Given the complicated history of this case, we "decline to substitute our judgment about the necessity and propriety of a continuance for that of the district court." *Command-Aire Corp.*, 963 F.2d at 96.

7

No. 09-10528
c/w 09-10782

**B.    Johnson's Rule 60(b) Motion for Relief from Judgment**

We review the district court's denial of a Rule 60(b) motion for abuse of discretion. *First Nationwide Bank v. Summer Hous. Joint Venture*, 902 F.2d 1197, 1200–01 (5th Cir. 1990). "In reviewing a denial of a Rule 60(b) motion, '[i]t is not enough that the granting of relief might have been permissible, or even warranted, denial must have been so *unwarranted* as to constitute an abuse of discretion.'" *Id.* at 1201 (emphasis in original) (alteration in original) (quoting *Huff v. Int'l Longshoremen's Ass'n, Local # 24*, 799 F.2d 1087, 1091 (5th Cir. 1986)) (quotation omitted).

Rule 60(b) states, in pertinent part:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
. . .
(4) the judgment is void;
. . .
(6) any other reason that justifies relief.

In the district court, Johnson moved for relief from judgment under Rule 60(b)(1), (4), and (6). On appeal, Johnson focuses only on the "excusable neglect" aspect of Rule 60(b)(1). Accordingly, we address only that aspect.

When determining whether there has been excusable neglect, we review "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These circumstances might include (1) "the danger of prejudice to the [non-movant]," (2) "the length of the delay and its potential impact on judicial proceedings," and (3) " the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

8

No. 09-10528
c/w 09-10782

Johnson argues that the district court abused its discretion because it did not sufficiently analyze all three of the factors described in *Pioneer Investment*. We disagree. While the court did not provide specific details on the first or second factors, it emphasized the third factor, finding that Johnson had consistently disregarded its orders and notices and that Johnson's failure to appear at trial was not an isolated incident. The district court implicitly determined that to the extent the first and second factors militated in favor of granting the motion (if at all), they were outweighed by the third factor. Certainly, we cannot say that the district court failed to consider "all relevant circumstances surrounding [Johnson's] omission," *id.*, or that the district court's decision was "so unwarranted as to constitute an abuse of discretion." *Huff*, 799 F.2d at 1091 (emphasis omitted).

## III.  CONCLUSION

The district court did not abuse its discretion in denying Johnson's motion to continue the trial or her Rule 60(b) motion for relief from judgment. Thus, we AFFIRM.