# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3461

_____

Peter Kiewit Sons', Inc.

*Plaintiff - Appellee*

v.

Wall Street Equity Group, Inc.; Wall Street Group of Companies, Inc.; Shepherd Friedman

*Defendant*s

Steven S. West

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 17, 2015
Filed: January 6, 2016

_____

Before RILEY, Chief Judge, BEAM and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This appeal arises out of a trademark infringement suit filed by Peter Kiewit Sons', Inc., in which the district court[1] first entered a default against the defendants as a sanction for discovery abuses, and then proceeded to enter default judgment against defendant Steven West in the amount of $913,099.46. On appeal, West argues that the district court abused its discretion in denying West's multiple motions to postpone the hearing on damages, and that it erred in calculating the damages award. We have jurisdiction under 28 U.S.C. § 1291 and, finding no error in the district court's rulings, we affirm.

## I. Background

West is a Florida businessman who, along with his business associate, Shepherd Friedman, owned Wall Street Equity Group, Inc., and Wall Street Group of Companies, Inc. All four were sued in September 2010 for trademark infringement by Kiewit, a large construction and mining company based in Omaha, Nebraska.

Kiewit sued because it had learned that the defendants had been contacting businesses and telling them Kiewit was interested in acquiring them, as long as they submitted to a valuation by West. In reality, Kiewit had no connection with the defendants. Their paths had crossed only once, in 2008, when Kiewit was in the process of acquiring a company called Jett Industries. After Jett's owner responded to an advertisement by one of West's companies, the company sent out a mass mail with information about Jett to a number of companies, including Kiewit. Kiewit expressed interest in buying Jett, but quickly realized that West's company had no expertise on acquisitions. As a result, Kiewit proceeded to work directly with Jett's

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

owner over the next two to three months to complete the acquisition; West and his company played no further role, apart from West's showing up to collect his fee at the closing of the deal.

A number of the solicitations sent out by the defendants offering to valuate companies mentioned Kiewit by name. This formed the basis for Kiewit's trademark infringement suit under the Lanham Act and Nebraska state law, for "Kiewit" is a service mark owned by Peter Kiewit Sons', Inc. In response, the defendants claimed that they had only used the "Kiewit" mark in solicitations on two occasions, and that they had no additional documents that used the word "Kiewit."

These statements turned out to be false, and in the judgment of the district court knowingly so. The defendants in fact possessed thousands of files containing the term "Kiewit," including letters to third parties very similar in content to the two solicitations the defendants had previously acknowledged. The defendants did not turn these files over in discovery. Instead, they engaged in a protracted campaign of obstruction and spoliation – with West going so far as to throw one of his file servers in a dumpster, claiming that its motherboard was "fried." In response to these discovery abuses, the magistrate judge in charge of discovery found that West "was not a believable witness" and had exhibited a "pattern of dishonesty under oath," and that the defendants had "intentionally submitted false evidence and testimony in bad faith, committed fraud on this court, and intentionally destroyed evidence with a desire to suppress the truth in this case." On her recommendation, the district court entered a default against each of the defendants as a sanction. None of the foregoing actions by the district court is contested on appeal.

The district court then scheduled a hearing for October 11, 2013, to further develop the factual record and determine the amount of damages. In the weeks leading up to this date, West, who by this time was no longer represented by counsel, filed several motions to postpone the hearing.

On September 5, 2013, West filed a motion asking to move the hearing to "any Friday in November starting with the second Friday" (in other words, to delay the hearing by at least four weeks) to accommodate a man named Frank Owen, whom West referred to as his attorney. According to West, Owen would be unable to attend a hearing on October 11 due to multiple medical operations, but he would be able to "participate in a one day video conference trial" by November. West noted that his own health as of October 11 would be uncertain due to unspecified medical ailments, but emphasized that Owen would clearly not be able to participate. The following day, the magistrate judge ordered Owen to make a formal appearance by September 13. Then, on September 11, West filed a pro se "Motion to Clarify the Previous Filing," explaining that he planned to represent himself because Owen was not "in a position to commit himself to a continuing relationship in this matter based on the economic challenges" West faced. He stated that Owen's role would be limited to "provid[ing] [him] with procedural advice and direction."

In response, the magistrate judge issued an order denying the motion to move the hearing. The order stated that if Owen's role in providing legal advice was to be significant enough to require rescheduling the hearing, he would need to enter an appearance for West; otherwise, the hearing would proceed without regard to Owen's availability. The order also clarified that the hearing would not be a "one day video trial," but would require the parties to be present in the courtroom. Finally, the order permitted West to re-file his motion if he could provide evidentiary support from a licensed medical provider indicating that West would be unable to attend the hearing in Omaha on October 11.

On September 24, West filed a second motion seeking to postpone the hearing to an unspecified date. Attached to the motion were three letters: one from I. Jay Asher, a psychotherapist, who opined that West had been "running in emergency mode for eleven years" and that "[a] stressful one-day trial could be life-threatening" to West; one from Dr. William A. Abelove, who stated that he had been treating West

for essential hypertension for over a decade and that "[p]articipation in a high pressure court proceeding could place him at increased risk for a major cardiovascular event"; and one from a psychiatrist named Dr. Richard W. Levin, who stated that West was suffering from severe depression, that despite treatment his progress in the past two weeks had been minimal, and that a court appearance "would be very deleterious to him and his mental status."

The next day, the magistrate judge denied his second motion, noting that each of the medical issues identified in the letters was long standing, and that there was little point in postponing the hearing when there was no indication that the conditions would improve in the future. She also pointed out that apart from the hypertension noted by Dr. Abelove, the medical opinions expressed in the letters were largely based on self-reporting by West, and that his credibility was suspect. West moved for reconsideration of the order a few days later, which was also denied.

On October 8, West moved for the magistrate judge to recuse herself, claiming that she was biased against him based on her rulings against him. The same motion also contained a request to delay the hearing, with a letter from his acupuncturist, Odin Gutierrez, attached. Gutierrez – who did not identify as a medical doctor – expressed the opinion that there "may be a high chance of Mr. West suffering a severe adverse medical event which could be a catastrophic cardiovascular event" if he were to participate in a one-day hearing, but he believed that West's health would "improve again, allowing a reasonable amount of time." The same day, the magistrate judge denied the motion, finding that she did not harbor bias against West. She also denied his request to move the hearing, finding that his acupuncturist's opinion was "not a sufficiently certain and reliable opinion from a qualified medical provider" to warrant reversing her prior decisions.

Finally, during an October 9, 2013, conference call, West orally moved a fourth time to defer the hearing. This time, the district court issued a written order denying

the motion, suggesting that West was effectively asking the court to postpone the hearing indefinitely, and expressing concern that West was attempting to do so in order to delay the outcome of the case. The hearing proceeded on October 11 as scheduled, without an appearance by West or anyone acting on his behalf.

Based on testimony at the hearing from two Kiewit employees and Friedman, as well as the allegations in the complaint, the district court found that Kiewit had stated a claim under the Lanham Act and Nebraska state law, and that West (but not Friedman) should be held personally liable for all the defendants' damages, without regard to the nominally separate legal existence of the Wall Street entities. Recognizing that there was little evidence to suggest that Kiewit had actually suffered harm, the court found it appropriate to award damages based on the profits generated by the defendants from their use of the Kiewit mark. And recognizing that the defendants had intentionally destroyed evidence that would permit an accurate calculation of their ill-gotten gains, the court increased the damages award beyond that which could be proved by direct evidence.

Thus, the $124,910 that was known to have been paid to the defendants based on solicitations containing the Kiewit mark was increased to $174,874 to account for four other businesses also known to have paid the defendants based on solicitations containing the Kiewit mark. Because the amount these four businesses paid the defendants was unknown, the court assumed that each business paid the defendants the average amount paid by the businesses whose payments were known. And then, based on a suggestion from Kiewit that the district court found "reasonable almost to a fault," this amount was in turn tripled to $524,622 to account for payments from unknown businesses that could not be proved due to defendants' spoliation of evidence. Finally, the district court awarded an additional $388,477.46 in attorney's fees and costs, and entered a permanent injunction against the defendants.

West timely filed an appeal.

## II. Discussion

West's first challenge is to the district court's refusal to postpone the hearing. We review the district court's denial of a deferment for abuse of discretion, Farmers Co-op Co. v. Senske & Son Transfer Co., 572 F.3d 492, 499 (8th Cir. 2009), and conclude that no such abuse occurred here. The district court was justified in declining to move the hearing based on West's claimed medical problems when it was given no credible evidence that the problems could be resolved within any concrete time frame, nor any reason why such a time frame could not be determined. See Johnson v. Potter, 364 F. App'x 159, 163 (5th Cir. 2010) ("[The plaintiff] sought a continuance solely on the basis of a letter from her doctor, and the letter gave no indication when, if ever, [she] would be available for trial. If the district court had not denied the motion, it might have waited indefinitely for [her] to be ready for trial.").

West counters that he requested only a four-week deferral, during which time his doctors would be able to restore him to health. But none of the letters he attached to his motions suggested that his health could be improved in four weeks. Indeed, his initial September 5 motion indicates that he asked for four additional weeks based on the unavailability of *Owen*, the attorney whose aid he hoped to enlist. And one of the letters he provided – the one submitted by Dr. Levin – stated with respect to West's treatment that "[p]rogress in the past two weeks has been minimal," casting further doubt on any claim that West's medical issues were temporary in nature and could be accommodated by a postponement of reasonable length.

To this must be added the fact that both the district court and the magistrate judge were clearly skeptical of West's credibility based on their experience with him during the discovery process. They were entitled to rely on this experience in evaluating the motives behind West's motions to delay the hearing, the veracity of

West's claimed ailments, and even the letters from medical professionals, to the extent they were based on West's own self-reporting. See Watson v. Miears, 772 F.2d 433, 437 (8th Cir. 1985). In light of these considerations, we cannot conclude that the district court or the magistrate judge abused their discretion in declining to delay the hearing.

West also argues that the district court erred by not deducting overhead and operating costs from its calculation of defendants' profits. The initial problem with this argument is that, as West admits, he never raised it before the district court. "Ordinarily, we do not consider an argument raised for the first time on appeal. We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002) (citations omitted).

West argues that the first of these two exceptions is satisfied here, because it can be gleaned from Friedman's testimony at the hearing that some of the payments the defendants received went towards operating costs and overhead:

> **Q.** Were the monies that the company raised by selling these valuations used to pay the staff?
> **A.** They were used to pay the staff. Generally speaking, they were used to pay the, quote, overhead.
> . . .
> **Q.** And these different fees that were raised by the company were to operate the office so to speak?
> **A.** Correct.

But this testimony alone does not allow us to deduct the correct amount of operating costs and overhead from the total damages awarded by the district court. Friedman's testimony suggests that – as one might expect – some of the money acquired through

the use of the Kiewit mark may have been used for operating costs and overhead, but we have no idea how much of it was. Since proving the amount of these costs was West's burden, <u>Tonka Corp. v. Tonk-A-Phone, Inc.</u>, 805 F.2d 793, 794 (8th Cir. 1986) (per curiam), and he cannot do so without further factual development, we cannot address for the first time on appeal his argument that the district court improperly failed to deduct operating costs and overhead.

West also seizes upon a stray comment by the district court that "[i]t is the Court's determination that under the circumstances of this case, the defendants' liability was not reasonably capable of ascertainment, and the Court's award is sufficient to make Kiewit whole." West argues that the reference to "mak[ing] Kiewit whole" shows that the district court improperly viewed its disgorgement remedy as compensatory. We think a reading of that statement in context puts that claim to rest: the previously-described methodology used by the district court for calculating the damages award was admirably transparent, and does not reveal any improper compensatory purpose.

Accordingly, the judgment of the district court is affirmed.

_____