**TIG INSURANCE COMPANY,**
**Plaintiff,**

v.

**NAFCO INSURANCE COMPANY,**
**LTD., Defendant.**

**No. Civ. 3:00–CV–1745–H.**

United States District Court,
N.D. Texas,
Dallas Division.

April 23, 2001.

Benjamin Love, Cowles & Thompson, Dallas, TX, Peter G Thompson, Ross Dixon & Bell, Washington, DC, Paula L Primost, Walter J Andrews, Shaw Pittman, Washington, DC, for TIG Ins. Co.

H Jerome Gette, G Brian Odom, Zelle Hofmann Voelbel & Gette, Dallas, TX, Patricia St Peter, Lawrence Zelle, Daniel J Millea, Chad A Snyder, Zelle Hofmann Voelbel Mason & Gette, Minneapolis, MN, for NAFCO Ins. Co. Ltd.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court is Defendant's Rule 12(b) Motion to Dismiss, filed October 4, 2000; Plaintiff's Opposition, filed October 24, 2000; Defendant's Reply Memorandum of Law, filed November 8, 2000; and Plaintiff's Supplemental Submission, filed November 14, 2000. Also before the Court, filed as an alternative to its Rule 12(b) motion, is Defendant's § 1404(a) Motion to Transfer Venue, filed November 15, 2000; Plaintiff's Opposition, filed December 1, 2000; and Defendant's Reply Memorandum, filed December 11, 2000. The Court heard oral arguments of counsel on both motions at a hearing on December 20, 2000. As directed by the Court at that hearing, counsel filed supplemental submissions addressing the results of Plaintiff's jurisdictional discovery, with respect

to the pending motions; both such submissions were filed on January 19, 2001.

## I. Background

Plaintiff in this case is a California corporation with its principal place of business in Irving, Texas (Compl.¶ 2). Defendant is a wholly owned subsidiary of Carlson Companies Incorporated ("Carlson"), and issues property and other insurance to its parent corporation.[1] Defendant is a Bermuda corporation which is "Bermuda-based" (Def.'s Mot. Dismiss at 2) but which also conducts business operations at Carlson's headquarters in Minnesota. (Def.'s Mot. Transfer, Millea Aff., ¶ 3). Plaintiff and Defendant entered into a series of three reinsurance contracts, which together covered the period July, 1997 to July, 2000. At the end of 1999, Carlson notified Defendant of its claim for reimbursement of its multi-million dollar remediation costs related to "Y2K."[2] Defendant, in turn, notified Plaintiff and Defendant's various other reinsurers of the claim. In this action, Plaintiff seeks 1) a declaratory judgment that it is not obligated under any of its contracts with Defendant to cover Carlson's Y2K remediation costs; and 2) a declaratory judgment that Plaintiff has

the right to rescind its contracts with Defendant, based on alleged material misrepresentations and omissions by Defendant regarding the nature and extent of Carlson's Y2K remediation efforts.

Defendant has moved that this Court dismiss Plaintiff's suit under FED. R. CIV. P. 12(b)(2), arguing that the Court has neither specific nor general personal jurisdiction over it. Alternatively, Defendant moves that the Court dismiss under FED. R. CIV. P. 12(b)(3) for improper venue, or transfer the case to Minnesota pursuant to 28 U.S.C. § 1406(a).[3] Finally, Defendant alternatively moves that the Court transfer this case to Minnesota pursuant to its discretion under 28 U.S.C. § 1404(a). The Court will address each motion in turn.

## II. Motion to Dismiss

### A. Personal Jurisdiction

#### 1. Standard

■ A federal court may exercise personal jurisdiction over a nonresident defendant if: 1) the defendant has committed an act that confers jurisdiction under the Texas long-arm statute, see TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997);

---

**1.** The Court notes that NAFCO is the only remaining Defendant in this case, as Plaintiff has voluntarily dismissed Carlson Holdings, Inc., Carlson Companies, Inc., and Carlson Real Estate Co. without prejudice. See Order of Sept. 13, 2000.

**2.** Several days before Plaintiff filed its Complaint in this case, Carlson filed a Minnesota state court action against NAFCO, TIG, and NAFCO's other reinsurers, seeking to establish coverage for its Y2K remediation costs; that case was subsequently removed. Since this Court heard oral arguments on Defendant's pending motions, the Minnesota court has made several rulings, resulting in Plaintiff's dismissal from that action. See Carlson v. NAFCO, No. 00–2080, RHK/JMM (D.Minn. Jan. 8, 2001) (dismissing Carlson's claims

against TIG and the other reinsurers); Carlson v. NAFCO, No. 00–2080 RHK/JMM (D.Minn. Jan. 12, 2001) (dismissing NAFCO's cross-claim against TIG). Plaintiff in this case is no longer a party to the litigation pending in Minnesota.

**3.** In its Motion to Dismiss, Defendant had articulated a third alternative ground for dismissal of this case, namely the ripeness of Plaintiff's action. (Def.'s Mem. Supp. Mot. Dismiss, at 5–7). As reflected in the pleadings, however, Defendant now agrees there is a justiciable controversy before the Court. (Def.'s Reply Mem. Supp. Mot. Transfer, at 3). The Court concludes that Defendant's ripeness challenge is moot and therefore expresses no opinion on it.

and 2) the exercise of jurisdiction under that statute does not deprive the defendant of the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992), *cert. denied*, 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). Because courts have interpreted the Texas long-arm statute to extend to the limits of due process, *see Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990), the sole inquiry for the Court is whether the assertion of personal jurisdiction over Defendant comports with federal constitutional requirements. *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir.1992).

■ Obtaining personal jurisdiction over a nonresident comports with constitutional requirements if the nonresident purposefully availed itself of the benefits and protections of Texas law by establishing minimum contacts with Texas such that it could reasonably anticipate being haled into court in Texas, and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir.1999) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986)).

■ Minimum contacts with a forum state may arise incident to a federal court's "general" or "specific" jurisdiction over a nonresident defendant. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). General jurisdiction exists when a nonresident defendant has engaged in continuous and systematic contacts with the forum state. *Jones*, 954 F.2d at 1068. Specific jurisdiction exists if the plaintiff can establish that the lawsuit arises out of, or relates to, the nonresident defendant's par-

ticular activity or contacts with or within the forum state. *Id.; Holt Oil*, 801 F.2d at 777.

■ In all cases, the plaintiff ultimately bears the burden of showing that the defendant is subject to personal jurisdiction in the forum state. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985). However, on a motion to dismiss the plaintiff need only make out a *prima facie* case of personal jurisdiction; proof by a preponderance of the evidence is not required. *Id.* at 1165. Conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists. *Bullion*, 895 F.2d at 215.

### 2. *Analysis*

Because this lawsuit is based on a series of contracts Defendant entered into with Plaintiff, the Court first considers its specific personal jurisdiction over Defendant. Defendant maintains that its only contacts with Texas have been the three reinsurance contracts between it and Plaintiff, and that Plaintiff has not met its prima facie burden of demonstrating that these are sufficient "minimum contacts" for jurisdiction in this forum. Plaintiff contends that it has established Defendant's purposeful direction of its activities in Texas in two ways: 1) Defendant's contacts with Texas in the process of negotiating, underwriting and issuing the contracts; and 2) the substance of representations and omissions by Defendant regarding the insured risks covered by the underlying contracts.

With respect to the negotiation, underwriting and issuance of the reinsurance contracts, the Court accepts Plaintiff's uncontroverted allegations as true, including the following: 1) Plaintiff's administrative office, identified in the contracts, is located

in Irving, Texas (Pl.'s Opp'n Mot. Dismiss, App. at 1, 10, 22); 2) Defendant, through Defendant's broker in Minnesota, solicited the purchase of the contracts, through Plaintiff's underwriter in Dallas, Texas; 3) Defendant's broker and Plaintiff's underwriter thereafter exchanged correspondence, in the form of facsimiles and letters, regarding the drafting, issuance and renewal of the contracts; 4) the three contracts were underwritten and issued in Texas; 5) Defendant's broker sent information relating to the insured risks to Plaintiff's underwriter in Texas (Pl.'s Opp'n Br. Mot. Dismiss, at 2–5); and 6) in providing this information, Defendant did not advise Plaintiff that Carlson might seek coverage of its Y2K remediation costs (Pl.'s Opp'n Br. Mot. Dismiss, at 11).

 Determination of specific personal jurisdiction is a close issue in this case. Of course, the mere fact that Defendant contracted with a resident of the forum state is not sufficient to support personal jurisdiction. *Holt Oil,* 801 F.2d at 778. The fact that the parties exchanged communications between Minnesota and Texas in the course of developing the three contracts is also itself insufficient to constitute purposeful availment of the benefits and protections of Texas law. *Id.* The Court must consider qualitatively and as a whole the relationship between the Defendant, the forum state, and this litigation.

 For the reasons stated below, the Court concludes that Plaintiff has met its prima facie burden on minimum contacts for specific personal jurisdiction over Defendant. As a threshold matter in the contract context, the Court considers the place where the contract is to be performed, which the Fifth Circuit deems "a weighty consideration." *Command–Aire Corp. v. Ontario Mechanical Sales and Serv. Inc.,* 963 F.2d 90, 94 (5th Cir.1992); *Mississippi Interstate Express, Inc. v.*

*Transpo, Inc.,* 681 F.2d 1003, 1008 (5th Cir.1982). In this case, the Court questions whether Plaintiff has demonstrated that a material part of its performance under the reinsurance contracts would take place in Texas. Other relevant factors, however, include the place of contracting and the law governing the contract. *Command–Aire,* 963 F.2d at 94. Under the facts of this case-no apparent in-person contract negotiations or other meetings, in Minnesota, Texas, or any other state, contract issuance in Texas, and contract drafting in Minnesota-the Court does not find the "place of contracting" squarely in either state. The contracts themselves contain no explicit choice of law clause governing disputes, but do contain several provisions requiring that the contracts be consistent with the law of issuance (Texas). Finally, the Court notes that Defendant solicited the purchase of reinsurance from Plaintiff, a Texas-based company, through communications directed at Plaintiff's underwriter in Dallas. The fact that Defendant also contracted for reinsurance with other companies in other states and abroad does not diminish the Court's conclusion that Defendant purposefully directed its business activity related to these contracts toward this forum.

Even if the parties' activities constituting the formation and renewal of the disputed contracts were not centered in Texas, the Court would conclude that the underlying misrepresentations and omissions allegedly made by Defendant during the contract negotiation and renewal process are sufficient to establish minimum contacts for specific personal jurisdiction. As the Fifth Circuit has recently affirmed, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air,* 195 F.3d at 213.

■ Because the Court has found sufficient minimum contacts for its specific personal jurisdiction over Plaintiff, it need not reach Plaintiff's alternative argument for general personal jurisdiction. Turning, then, to the second prong of the due process analysis, the Court concludes that Defendant has not met *its* burden of showing that the assertion of jurisdiction would be unfair. *See Wien Air*, 195 F.3d at 215. The interests to balance in this reasonableness determination are: 1) the burden on the defendant; 2) the forum state's interests in the lawsuit; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the judicial system's interest in efficient resolution of controversies; and 5) the states' shared interest in furthering fundamental substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Wien Air*, 195 F.3d at 215.

The burden on Defendant, who availed itself of this forum, is not unreasonable. Defendant's broker solicited reinsurance in its behalf from a Texas-based company, and Defendant entered into a series of contracts over the course of three years. The contracts contain various provisions requiring that they conform with Texas law, giving Texas a further interest in adjudication of the case. Litigating in Texas satisfies the Plaintiff's interest in obtaining convenient and effective relief and provides an efficient resolution of the controversy. The Court therefore concludes that maintenance of this action against Defendant in Texas will not offend traditional notions of fair play and substantial justice.

### B. Improper Venue

When a case is filed laying venue in the wrong division or district the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). This being a diversity case, venue is proper if "a substantial part of the events or omissions giving rise to the claim" occurred in this district. 28 U.S.C. § 1391(b)(2). Venue, of course, may be proper in more than one district.

■ Defendant relies on a previous opinion of this Court to argue that Plaintiff's underwriter's receipt of letters and phone calls in Dallas does not constitute a "substantial part" of the relevant events and omissions for venue purposes. *See Ancel v. Rexford Rand Corp.*, 1994 WL 539287 at *3 (N.D.Tex. Sept. 19, 1994). This case is distinguishable from *Ancel*, however. As discussed above, Plaintiff's end of the interstate contract negotiations, which involved an ongoing and mutual exchange of communications between Plaintiff's underwriter and Defendant's broker, took place in Texas. The three contracts were also issued from Plaintiff's office in Irving, Texas. Finally, the evidence proffered by Plaintiff establishes that a significant amount of Carlson's Y2K remediation efforts, which give rise to the underlying Carlson–NAFCO dispute and to this dispute, took place in this forum. (Pl.'s Supp. App. at 75, 88–91, 106, 138–162, 158–159). Based on its review of the operative venue facts in this case, the Court concludes that Plaintiff has provided enough evidence to establish that these Texas-based events and omissions were "substantial" for purposes of § 1391(b)(2), and therefore that venue is proper in this district.

### III. Motion to Transfer Venue

### A. Standard

Even where there is personal jurisdiction and proper venue, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As both counsel conceded at oral arguments, Plaintiff's declaratory judgment action could have been brought in the District of Minnesota. (Hr'g R. at 12, 15).

██ ██ Whether to transfer venue in a particular action is committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988). The Defendant bears the burden of proving that transfer is appropriate. *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989). Unless the balance of factors strongly favors the moving party, the plaintiff's choice of forum generally should not be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966); *Salem Radio Representatives, Inc. v. Can Tel Market Support Group*, 114 F.Supp.2d 553 (N.D.Tex. 2000). The Court should not transfer a case "where the only practical effect is the shifting of inconvenience from the non-moving party to the moving party." *Salem Radio*, 114 F.Supp.2d at 558.

## B. Analysis

██ As a threshold matter, the Court recognizes that Plaintiff in this case has been dismissed from the litigation pending in Minnesota between Carlson and the Defendant.[4] Accordingly, the Court does not consider the arguable relatedness of that litigation in its analysis of the instant motion. Considering the pleadings, record evidence, and arguments in light of the *Gulf Oil* factors, the Court concludes that Defendant has not met its burden to justi-

fy a discretionary transfer under § 1404(a).

Certain of the relevant factors do not substantially favor either side in this matter. Regarding convenience of the parties, Plaintiff's administrative office is in the forum state, but other corporate offices apparently also involved in this dispute are located in other states; Defendant is formally based outside of the United States, but also conducts business operations at the offices of, and with certain personnel from, its parent corporation in Minnesota. Location of counsel also favors neither side; while both parties have retained counsel in Texas, lead counsel for Defendant is in Minnesota (Def.'s Reply Mem. Supp. Mot. Transfer, at 4) and lead counsel for Plaintiffs, based on appearances at motion hearings in this Court and in Minnesota, is from Washington, D.C. (Def.'s Mot. Transfer, Millea Aff. ¶ 6). The location of the parties' books and other documents does not favor either side. Plaintiff argues that the underwriting file is located in Texas (Pl.'s Opp'n Br. Mot. Transfer, at 2), while Defendant notes that the bulk of its relevant records are housed in Minnesota (Def.'s Mot. Transfer, Millea Aff. ¶¶ 3, 5). The Court acknowledges that certain records of Minnesota-based entities not parties to this case, namely the Hays Group and Carlson, may be essential to this litigation. Defendant, however, has not demonstrated that such documents could not be made available in Texas, and thus the location of such evidence does not weigh heavily toward transfer of the case.

Most important in this analysis is the convenience of non-party witnesses. *See, e.g., Dallas Semiconductor Corp. v. Hughes Avicom Int'l, Inc.*, 1998 WL 25542, *2 (N.D.Tex. Jan. 12, 1998). As counsel

---

4. *See supra* note 2. The court in Minnesota concluded that Plaintiff and the other reinsurers who had also been sued were not interest-

ed parties in the dispute between Defendant and its insured.

have argued, the Court gives less consideration to the convenience of witnesses who are employees of a party, as their testimony can be compelled. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392 (S.D.Tex.1992). Moreover, the Court's evaluation of this critical factor centers not on the numbers of potential witnesses on each side, but on the substance of their relation to the dispute and thus the likely significance of their testimony.

Defendant has preliminarily identified nine potential witnesses in this case, all of whom are Minnesota residents. (Def.'s Mot. Transfer, Millea Aff. ¶ 4).[5] Aside from a brief phrase identifying the connection of each possible witness to the contracts in dispute, however, Defendant has not summarized their likely testimony in any way that would allow the Court to consider whether such testimony would be cumulative or unnecessary for trial. *See SMI–Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 113 F.Supp.2d 1101, 1104 (S.D.Tex.2000). Plaintiff emphasizes that its Texas-based underwriter (Mr. Boddie) is a key witness in this dispute, a point which Defendant concedes, and further pleads that other TIG employees involved in Defendant's claim are located in Texas (Pl.'s Opp'n Br. Mot. Transfer, at 2). The Court notes that Plaintiff's key witness is a Texas resident and outside the subpoena power of the Minnesota court. *See* Fed. R. Civ. P. 45(b)(2). While the converse is also true of his counterpart in this dispute (Mr. Glasgow, an employee of a Minnesota insurance brokerage firm), the Court declines simply to shift this inconvenience from Defendant to Plaintiff.

Considering the place of the alleged wrong, the Court notes that the parties differ substantially in their accounts of where the operative venue facts in this lawsuit took place, particularly with respect to Plaintiff's rescission claim. As discussed above, however, Plaintiff has established that a substantial part of the operative facts occurred in the Northern District of Texas. Based on this conclusion, as well as the fact that Plaintiff resides in its forum of choice, the Court exercises the strong presumption favoring Plaintiff's choice of forum. *See Mannatech Inc. v. See,* 2000 WL 256326 at \*4 (N.D.Tex. Mar. 7, 2000).

Finally, the possibility of undue delay or prejudice resulting from transfer is minimal in this action. This Court, however, has familiarized itself with the parties and the facts; judicial economy therefore weighs toward maintaining suit in this forum. For all of the foregoing reasons, the Court concludes that Defendant has not established that Minnesota is a more convenient forum for the adjudication of this cause, and thus a discretionary transfer pursuant to § 1404(a) is not warranted.

## IV. Conclusion

After considering the pleadings, briefs, arguments of counsel and relevant authorities, the Court determines that it has personal jurisdiction over Defendant, that venue is proper in this forum, and that Defendant has not met its burden for a discretionary transfer of this case to Minnesota. Based on the foregoing analysis, Defendant's Rule 12(b) Motion to Dis-

---

**5.** Three of these witnesses are Hays Group employees and six are representatives of Defendant employed by Defendant's parent corporation, Carlson Companies Inc. As a wholly owned subsidiary of Carlson, Defendant apparently relies on Carlson personnel for vari-

ous expertise in managing its business, particularly Carlson risk management personnel responsible for certain aspects of Defendant's operations. (Def.'s Reply Mem. Supp. Mot. Transfer, at 4 n. 2; 5–6).

miss and § 1404(a) Motion to Transfer Venue are hereby **DENIED**.

SO ORDERED.